[No. 57264-0. En Banc. July 11, 1991.]

SUSANNE WICHERT, *Petitioner*, v. JOHN DOE CARDWELL, ET AL, *Respondents*.

*Edwards, Sieh, Wiggins & Hathaway,* by *Charles K. Wiggins,* for petitioner.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Sidney R. Snyder, Jr.,* and *Ronald S. Dinning,* for respondents.

BRACHTENBACH, J. — At issue is the sufficiency of service of process and, more particularly, whether the method of service here employed was reasonably calculated to accomplish service. The Court of Appeals, on a motion on the merits, affirmed the trial court's dismissal of plaintiff's lawsuit. We reverse.

Plaintiff's suit for personal injuries was filed 1 day before expiration of the statute of limitations. Plaintiff attempted service of the summons and complaint within 90 days of filing. RCW 4.16.170.

Substitute service of process is authorized by RCW 4.28.080(14). Three separate elements must be satisfied to constitute such service: (1) a copy of the summons must be left at the house of defendant's usual abode, (2) with some person of suitable age and discretion, (3) then resident therein. Only element (3) is at issue.

The facts come solely from the findings of fact. The court denied defendants' motion for summary judgment because the affidavits raised a genuine issue of material fact. After trial on the short matter calendar, findings of fact were entered. Plaintiff assigned no error to those findings; there is no report of proceedings. Thus we are limited to those facts. Factual issues raised by plaintiff in the Court of Appeals must be excluded.[1]

Defendants were out of state when service was made. Their residence was occupied by defendant wife's 26-year-old daughter who had stayed there the night before process was served. The daughter had a key to defendant's residence. The daughter lived in her own apartment, was self-supporting and had no personal possessions at the residence. The daughter infrequently stayed over at defendant's residence.

As to what happened when the process server came to the residence we only have a sketchy, somewhat conclusory finding:

> He [the process server] was greeted by the defendant Frankie Cardwell's daughter, Kim Pearson. The process server informed Kim Pearson that he was there to serve a summons and complaint on the defendants Cardwell. A discussion was held between Gary Brastad and Kim Pearson as to whether or not she was a suitable person to be served. Eventually, she did take possession of the summons and complaint.

Finding of fact 2. Clerk's Papers, at 19.

The defendants in fact received the summons and complaint; a notice of appearance was entered 10 days after service.

---

[1]Counsel in this court was not counsel below.

Our focus is upon the statutory phrase "then resident therein." The word "then" necessarily refers to the time of service; "therein" refers to the defendant's usual place of abode. The precise question then is the meaning of "resident therein" within the context and purpose of the statute.

■ There are numerous rules of statutory construction, but of particular relevance here are (1) the spirit and intent of the statute should prevail over the literal letter of the law and (2) there should be made that interpretation which best advances the perceived legislative purpose. *In re R.*, 97 Wn.2d 182, 187, 641 P.2d 704 (1982); *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990).

This court has observed that "[e]ach of the terms 'reside,' 'residing,' 'resident,' and 'residence' is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statute in which the term is employed." *McGrath v. Stevenson*, 194 Wash. 160, 162, 77 P.2d 608 (1938).

■ The purpose of statutes which prescribe the methods of service of process is to provide due process. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 58 L. Ed. 1363, 34 S. Ct. 779 (1914). That opportunity to be heard in turn depends upon notice that a suit is being commenced. However, "[p]ersonal service has not in all circumstances been regarded as indispensable to the process due to residents . . .." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Compliance with due process is described thusly: "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, at 315.

We then must put the method of service employed here to the *Mullane* test, *i.e.*, whether that method is such that a plaintiff "desirous of actually informing the absentee might reasonably adopt to accomplish it."

Before making that evaluation, however, we note the obvious that the plaintiff would prefer to personally serve the defendant and eliminate the uncertainty of sufficiency of substitute service. But the defendants were absent; the time for service was about to expire. Also, this court has noted the dual purposes of the statute in question. In *Northwestern & Pac. Hypotheek Bank v. Ridpath*, 29 Wash. 687, 710, 70 P. 139 (1902), "[t]his statute providing for service at his usual abode was not made exclusively for the benefit and protection of defendants, but was made also for the benefit and protection of parties who have just claims, so that residents of the state could not depart therefrom and defeat their creditors."

■ ■ Service upon a defendant's adult child who is an overnight resident in the house of defendant's usual abode, and then the sole occupant thereof, is reasonably calculated to accomplish notice to the defendant. When defendant is absent, the person in possession of the house of usual abode is likely to present the papers to the defendant, particularly when that person is a family member.

We recognize that this decision does not establish a "bright line" rule, but a case-to-case determination is necessitated by the fact-specific requirements of the statute. "[T]he practicalities of the particular fact situation determine whether service meets the requirements of [Fed. R. Civ. P.] 4(d) (1)." *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967), *cert. denied*, 390 U.S. 956, 19 L. Ed. 2d 1150, 88 S. Ct. 1053 (1968).

We also note that the inquiry in any case is upon the method of attempted service, *i.e.*, was it reasonably calculated to provide notice to the defendant? "It is hornbook law that a constitutionally proper method of effecting substituted service need not guarantee that in all cases the defendant will in fact receive actual notice . . .." (Citation omitted.) *Bossuk v. Steinberg*, 58 N.Y.2d 916, 918, 447 N.E.2d 56, 460 N.Y.S.2d 509 (1983).

Defendants rely upon *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 83 P.2d 221, 118 A.L.R. 1484 (1938). That case is factually distinguishable. Service was upon the defendant's daughter-in-law in a hotel room temporarily occupied by defendants. While the court commented upon the daughter-in-law's status as a mere visitor, the real holding appears to be this: "We think that it also clearly appears that the room in the Englehorn hotel was not the house of usual abode of Mr. and Mrs. Gooley." *Hancock,* at 369. If that is correct, the status of the recipient is not material.

Defendants also argue that the statute must be strictly construed because it is in derogation of common law. This principle of statutory construction is often cited and has been used in construing the constructive or substituted service statute, *see, e.g., Muncie v. Westcraft Corp.,* 58 Wn.2d 36, 38, 360 P.2d 744 (1961).

Unfortunately the purpose and rationale of a rule of construction that a statute in derogation of the common law generally have not been explored in connection with application of the rule in a particular case. The observation has been made that this rule and other maxims of interpretation "are merely justifications for decisions arrived at on other grounds, which may or may not be revealed in the opinion." Patterson, *The Interpretation and Construction of Contracts,* 64 Colum. L. Rev. 833, 852 (1964).

When it is urged that a statute should be strictly construed because it is derogation of the common law a number of issues are apparent. One should start with RCW 4.04.010.

> The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state.

RCW 4.04.010.

The first step is to ascertain what was "the common law" as contemplated by RCW 4.04.010. *See, e.g., Sayward v. Carlson*, 1 Wash. 29, 40, 23 P. 830 (1890); *Cooper v. Runnels*, 48 Wn.2d 108, 291 P.2d 657, 57 A.L.R.2d 597 (1955).

Once the court determines what it considers to be "the common law", the next question is whether the statute is in "derogation" thereof.

Consideration must be given to RCW 1.12.010.

> The provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction.

We note that this statute dates from 1854. The 1854 act was the entire civil practice act, 102 pages, and provided that it "shall be liberally construed, and shall not be limited by any rule of strict construction." Laws of 1854, p. 221, § 504. Section 28(5) provided for substitute service "to some suitable person of the family, above the age of fourteen years, at the dwelling house or usual place of abode of the defendant." Laws of 1854, p. 136, § 28(5).

Arguably the rule of liberal construction applies to the present statute, RCW 4.28.080, but the matter is not briefed and we express no opinion thereon.

■ If we assume, and it is only an assumption, that RCW 4.28.080(14) is in derogation of the common law, what does it mean that it is to be strictly construed? We believe the proper use of strict construction is merely to ascertain whether the statute was in fact intended to change the common law. That is an appropriate inquiry in view of RCW 4.04.010.

Imprecise, or at least nonanalytical, use of the maxim has occurred. Is the statute to be examined critically solely to determine whether the Legislature intended and accomplished a change from the common law, or if that intent to change is found, is the statute itself to be strictly construed merely because it represents a change from the common law? *McNeal v. Allen*, 95 Wn.2d 265, 269, 621 P.2d 1285 (1980) appears to hold that both approaches are

applied, *i.e.*, there must be a clear intent to change the common law *and* the statute must be strictly construed.

On the other hand, and clashing with *McNeal*, we have said: "But where, as here, a statute is plain and unambiguous, it must be construed in conformity to its obvious meaning without regard to the previous state of the common law." *State ex rel. Madden v. PUD 1*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973).

This whole principle of strict construction of statutes in derogation of the common law "has been the object of a great deal of criticism in modern times." 3 N. Singer, *Statutory Construction* § 61.04 (4th ed. 1986). Dean Pound has said that it "has no analytical or philosophical justification." 3 R. Pound, *Jurisprudence* 664 (1959).

The Minnesota court has been quite explicit in its treatment of the rule:

> At the outset, we do not consider ourselves at liberty to apply any rule of "strict construction" to this or any other statute, simply because it happens to be in derogation of common law. Legislatures intend by such statutes to replace or change rules of the common law. Too much judicial indulgence in "strict construction" of statutes has heretofore disguised "extraconstitutional obstacles to, or hindrances of, legislative purpose." State ex rel. City of St. Paul v. M[in]neapolis], St. P. & S. S. M. Ry. Co., 190 Minn. 162, 165, 251 N. W. 275, 277 [(1933)]. However radical the change, we do not permit ourselves, because it is an innovation, so to limit a statute by construction as to defeat or even hinder its purpose. Our effort is rather to give any statute "a fair construction, with the purpose of its enactment in view, not narrowed or restricted because it is a substitute for the discarded common law." Wells-Dickey Trust Co. v. C[hicago], B. & Q. R. Co., 159 Minn. 417, 422, 199 N. W. 101, 103 [(1924)]. It is with that rule, rather than any notion either of duty or right to construe strictly, as a guide, that we attempt interpretation of the . . . statute.

*Teders v. Rothermel*, 205 Minn. 470, 472, 286 N.W. 353 (1939).

It is apparent that much more analysis is needed to craft a proper and meaningful principle of construction when a statute purports to change an identified common law rule. Mere quotation of the "rule" is not enough, be it

in a brief or an opinion. Another case, with thorough briefing and analysis should cause a complete review and resolution.

In this case, given the briefs, it is adequate to note that we *assume* that the common law required personal service of process and that only personal service would suffice. We need not strictly construe the statute to conclude that the Legislature, if that were the common law, intended to change it by permitting substitute service. Having identified that change, we do not apply a strict construction in interpreting the statute. Rather, we so construe the statute as to give meaning to its spirit and purpose, guided by the principles of due process stated above.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.