917 P.2d 131 (1996)
82 Wash.App. 1
Richard SCOTT, a single person, Appellant,
v.
Pearl GOLDMAN, a single person, Respondent.
No. 18540-7-II.
Court of Appeals of Washington, Division 2.
March 29, 1996.
Publication Ordered May 24, 1996.
*132 John A. Rorem, Gig Harbor, for appellant.
John A. Paglia, Tacoma, for respondent.
SEINFELD, Chief Judge.
Richard Scott appeals the vacation of a default judgment he obtained against Pearl Goldman. Goldman cross appeals, asserting that the trial court erred by dismissing Scott's claim without prejudice. We affirm.

PROCEDURAL HISTORY AND FACTS
On the same day that Scott filed this action for misappropriation of funds and involuntary servitude against Goldman, he sent a process server to serve her at her Roy, Washington, residence. The process server was unsuccessful as he could not find Goldman's proper address.
Scott's attorney later learned that Goldman might be residing with her son and daughter-in-law, Ernest and Gayle Brock. The process server went to the Brocks' home in Puyallup. Upon learning that Goldman had granted Ernest Brock a general power of attorney, the process server served Brock on behalf of his mother.
On the advice of Goldman's attorney, Brock did not enter an appearance on Goldman's behalf. Scott then moved for a default judgment. The affidavit of service accompanying the motion stated that Goldman had received valid substitute service at her son's residence in Puyallup.[1] The trial court entered a default judgment against Goldman on September 21, 1989.
*133 On May 31, 1994, Goldman moved to have the judgment set aside. The trial court granted the motion by letter opinion, finding that Scott had failed to establish in personam jurisdiction over Goldman. Scott moved for reconsideration.
In August 1994, Commonwealth Land Title Insurance Company (Commonwealth) served a summons and complaint on Goldman's attorney to initiate action against Goldman and the Brocks. Commonwealth sought recovery of $20,000 it had paid Scott to release it from a judgment lien. The suit apparently involved real property Goldman had conveyed after entry of the default judgment and after a judgment lien had been placed on the property.
The trial court signed an order vacating the default, judgment and denying Scott's motion for reconsideration on August 19, 1994. The order also denied a motion by Goldman to have Scott and his attorney repay the $20,000 they had allegedly received from Commonwealth.
Goldman moved to reopen and amend the judgment. Offering documentation of Commonwealth's action for breach of warranty as support, Goldman asked the court to modify the order to direct Scott and his attorney to either pay or indemnify her for the $20,000 Commonwealth sought to recover. The trial court denied her motion.
On appeal, Scott claims that RCW 11.94.010 and .050 implicitly authorize the holder of a general power of attorney to accept service on behalf of the principal and, in the alternative, that his service was sufficient to obtain jurisdiction over Goldman because it was calculated to give Goldman, her attorney-in-fact, and her attorney-at-law actual notice.
In her cross-appeal, Goldman assigns error to the trial court's dismissal of Scott's complaint without prejudice, its denial of her motion for attorney fees, and its denial of her request for an order requiring Scott to repay or hold Goldman harmless for the $20,000 Scott received from Commonwealth.

I
Scott contends that the general power of attorney grants Brock the authority to accept service on behalf of his mother. Scott argues that Goldman's appointment of her son granted him unlimited authority and, therefore, the only constraints on Brock's powers are those set forth at RCW 11.94.010 and.050. He also cites language within the document authorizing Brock to "sue" on Goldman's behalf. He argues that initiating a lawsuit and accepting service result in similar consequences for the principal because, in both instances, the attorney-in-fact's actions subject the principal to the jurisdiction of the court. According to Scott, by allowing Brock to initiate a legal action on her behalf, Goldman indicated that she intended to authorize him to accept process also. Neither the statute nor the case law supports this argument.
"First and basic to any litigation is jurisdiction. First and basic to jurisdiction is service of process." In re Marriage of Logg, 74 Wash.App. 781, 786, 875 P.2d 647 (1994) (quoting Painter v. Olney, 37 Wash.App. 424, 427, 680 P.2d 1066, review denied, 102 Wash.2d 1002 (1984)). When a trial court lacks in personam jurisdiction over a party, any judgment entered by the court against that party is void. Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces, 36 Wash.App. 480, 486, 674 P.2d 1271 (1984). Courts have a mandatory duty to vacate void judgments. Brenner v. Port of Bellingham, 53 Wash.App. 182, 188, 765 P.2d 1333 (1989).
Courts strictly construe the powers set forth in a general power of attorney.
A power of attorney is a written instrument by which one person, as principal, appoints another as agent and confers on the agent authority to act in the place and stead of the principal for the purposes set forth in the instrument. Powers of attorney are strictly construed. Accordingly, the instrument will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the express provisions.
Bryant v. Bryant, 125 Wash.2d 113, 117-18, 882 P.2d 169 (1994) (citations omitted).
*134 Even when a power of attorney professes to extend all the principal's authority to the attorney-in-fact, that authority is not without limits. For example, the attorney in-fact may not alter the terms of the principal's testamentary devices unless the document explicitly grants this authority. RCW 11.94.050.
We are not persuaded by Scott's citation to Auwarter v. Kroll, 79 Wash. 179, 140 P. 326 (1914), to support the converse proposition: that the instrument restricts only those powers that are clearly stated within the document. Auwarter addressed the narrow question of whether the authority granted by a general power of attorney (similar to the one at issue here) attaches to after acquired property. The Auwarter court concluded that it did, relying on language in the power of attorney authorizing the attorney-in-fact to act with reference to "all manner of business." Auwarter, 79 Wash. at 181, 140 P. 326. In doing so, the Auwarter court reaffirmed the rule that courts are to strictly construe a general power of attorney.
[W]here the power is general, and there is no ambiguity or uncertainty in the instrument creating the agency, one dealing with an agent is not bound to look beyond the instrument itself, or to make any inquiry that might lead to any secret reservation or understanding as between the principal and his agent at the time the power of attorney was executed.
Auwarter, 79 Wash. at 181, 140 P. 326.
Likewise, the other authority cited by Scott is either distinguishable, because the governing court rules provide for service on an individual defendant's agent, or simply inapplicable. See United States v. Balanovski, 236 F.2d 298, 303 (2d Cir.1956) (noting probable in personam jurisdiction under Federal Rules of Civil Procedure which provide for service on individual defendant's agent), cert. denied, 352 U.S. 968, 77 S.Ct. 357, 1 L.Ed.2d 322 (1957); Merz v. Mehner, 57 Wash. 324, 326-27, 106 P. 1118 (1910) (trustee empowered to sue on behalf of trust can be sued as representative of the trust); Ashcraft v. Powers, 22 Wash. 440, 443, 61 P. 161 (1900) (attorney-at-law cannot accept service without special authority from his client set forth in a power of attorney); Warner Bros. Records, Inc. v. Golden West Music Sales, 36 Cal.App.3d 1012, 1018, 112 Cal.Rptr. 71, 74, (1974) (court rule provides for service on agent of defendant authorized by law or appointment to receive service).
The general power of attorney here granted Brock authority to administer Goldman's finances and property interests and take certain clearly delineated legal actions to forward these interests. Those actions do not include acceptance of service. Nor is the power of attorney unlimited in scope. Thus, we conclude that Brock lacked authority to accept service on behalf of his mother.

II
We also decline Scott's invitation to liberally construe the definition of "guardian," RCW 4.28.080(12), to include a person holding a general durable power of attorney for a principal.[2] "A court must construe a statute according to its plain language, and statutory construction is unnecessary and improper when the wording of a statute is unambiguous." State v. Parada, 75 Wash. App. 224, 230, 877 P.2d 231 (1994). "Strained, unlikely or unrealistic" statutory interpretations are to be avoided. Bour v. Johnson, 122 Wash.2d 829, 835, 864 P.2d 380 (1993).
A guardian and an attorney-in-fact are two distinct legal entities, controlled and defined in separate and distinct statutory schemes. Compare RCW 11.94 (Power of Attorney) and RCW 11.88 (Guardianship). A guardian is appointed by the superior court and must abide by the laws and perform the duties set forth in RCW 11.88 and RCW 11.92. An attorney-in-fact, on the other hand, is appointed by the principal and, with few exceptions, his authority is limited to the specific powers set forth in the power of *135 attorney. Bryant, 125 Wash.2d at 117-18, 882 P.2d 169. See generally, 3 Am.Jur.2d Agency § 5 (1986) (comparison of guardian to agent). As the distinction between a guardian and an attorney-in-fact is unambiguous, we will not interpret "guardian" to include an entity beyond the scope of its statutory definition.

III
Scott argues that he substantially complied with RCW 4.28.080(15), the substituted service statute, by serving process in a manner reasonably calculated to give Goldman, her attorney-in-fact, and her attorney-at-law notice of the pending action. See Wichert v. Cardwell, 117 Wash.2d 148, 151, 812 P.2d 858 (1991).
One must satisfy three elements to perfect substitute service of process: (1) a copy of the summons must be left at defendant's usual abode, (2) with a person of suitable age and discretion, (3) then residing there. RCW 4.28.080(15); Wichert, 117 Wash.2d at 150, 812 P.2d 858. There is no evidence and Scott does not claim that Brock's home was Goldman's usual abode. The situation here is distinguishable from Wichert where the plaintiff served the defendant's adult daughter at her parents' residence after she spent the previous night at her parent's home. Scott served Brock at Brock's residence in Puyallup at a time when Goldman was residing at her home in Roy. Accordingly, Scott cannot present a colorable argument that he substantially complied with the statutory substitute service requirements. See Mid-City Materials, 36 Wash. App. at 484, 674 P.2d 1271 (service on adult son at his residence ineffective as service on parents when parents reside at different location).

IV
In her cross appeal, Goldman argues that the trial court erred in denying her a dismissal with prejudice because the relevant statutory periods had run. CR 41(b)(3) states that the trial court need not dismiss with prejudice where it lacks jurisdiction. It provides in pertinent part:
Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under rule 19, operates as an adjudication upon the merits.
CR 41(b)(3). Without jurisdiction, the trial court lacked authority to determine if the statutory period had run. Thus, it properly set aside the default judgment and dismissed the case without prejudice, in accordance with CR 41(b)(3).

V
Goldman argues for the first time on appeal that she was entitled to attorney fees below pursuant to CR 11 and RCW 4.84.185 because Scott pursued the litigation in bad faith. A litigant, however, cannot seek relief on appeal that he or she failed to ask for at trial. See Walsh v. Brousseau, 62 Wash.App. 739, 747, 815 P.2d 828 (1991). Thus, we decline to consider this assignment of error.

VI
Goldman argues that the trial court should have granted her motion to amend the judgment, requiring Scott to either pay or indemnify her for the $20,000 he received from Commonwealth to release the judgment lien. Scott contends that the trial court, having found the judgment void, lacked jurisdiction to order any relief other than a dismissal. He further argues that issuance of an order for such relief would be inappropriate as Commonwealth was not a party to the litigation.
We review a decision regarding the reopening of a judgment for abuse of discretion. City of Seattle v. Pacific States Lumber Co., 166 Wash. 517, 532-33, 7 P.2d 967 (1932). A reviewing court will find an abuse of discretion only where there is a clear showing that the discretion was exercised on manifestly unfair, unreasonable, or untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
CR 59(g) provides:

*136 On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
The purpose of CR 59(g) is to "speed[] up the disposition of the case and avoid[] the unfortunate effects of unnecessary new trials such as are sometimes granted in jury cases and might have been avoided." Lewis H. Orland and Karl B. Tegland, 14 Wash. Prac., Trial Practice Civil § 305 (1986 ed.).
Granting Goldman's motion to amend the judgment would not have served these purposes. When the trial court denied Goldman's motion, Commonwealth's action against Goldman was still in its formative stages. At the time Goldman filed her motion Commonwealth had not even perfected service on Goldman. Consequently, the resolution of this litigation at the time the trial court entered its judgment was highly speculative. Moreover, beyond copies of Commonwealth's summons and complaint, the trial court had no evidence documenting Goldman's contention that Scott should be held responsible for the alleged breach of warranty. The trial court's decision to refrain from modifying its order of dismissal was neither unfair, unreasonable, nor untenable.

VII
Finally, Goldman argues that Scott violated CR 4(h) by attempting to amend the affidavit of service without seeking permission from the court or providing notice to his adversary and, therefore, the issues pertaining to the validity of service are not properly before this court. As the trial court found the service to be ineffective and we are affirming that decision, we need not address this contention.
We affirm.
HOUGHTON and ARMSTRONG, JJ., concur.
NOTES
[1] On March 23, 1990, Scott's attorney filed a second affidavit of service, executed on October 3, 1989. In the last paragraph, the process server declared:

[Mr. Brock] stated that he could accept the documents for his mother as he had power of attorney. At this point, Mr. Brock's wife produced the Power of Attorney document. I served Mr. Brock the documents and thanked them for their hospitality. I left with no further incident.
Ernest Brock admits that he told the process server he held a durable power of attorney for his mother, but denies claiming that he could accept process for her. Ernest and Gayle Brock both deny that they showed the process server a copy of the power of attorney.
[2] RCW 4.28.080(12) provides:

The summons shall be served by delivering a copy thereof, as follows:
....
(12) If against any person for whom a guardian has been appointed for any cause, then to such guardian.