IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  36230-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JASON LEE BORSETH, a/k/a JASON LEE FISHEL, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Jason Borseth responded to an advertisement for sexual conduct

with a minor placed by officers engaged in a "Net Nanny" sting operation, and was

convicted of attempted first degree rape of a child, attempted commercial sexual abuse of

a minor, and possession of a controlled substance.  He challenges the legality of the Net

Nanny operation, the sufficiency of evidence for the attempted commercial sexual abuse

charge, ineffective assistance of counsel, prosecutorial misconduct, and sentencing error.

The State concedes that a sentencing enhancement and criminal filing fee should not have been imposed. We accept the State's concessions and otherwise affirm. We remand with directions to strike the sentencing enhancement and criminal filing fee.

FACTS AND PROCEDURAL BACKGROUND

Jason Borseth answered an advertisement on the Spokane Craigslist "casual encounters" page placed by undercover police officers, who posed as a mother offering sexual conduct with her minor children. Law enforcement recorded Mr. Borseth's e-mails, text messages, and phone calls with officers who posed as "Jay," the fictional mother of three children, including a fictional 11 year old named "Anna."

After officers engaged Mr. Borseth in enough distasteful discussion about what he might do with Anna to make a case against him, including getting his assurances that he would bring condoms, cash, and methamphetamine, Jay gave him an address for her fictitious home. When he arrived, Mr. Borseth was arrested.

Mr. Borseth was read *Miranda*[1] warnings and agreed to be interviewed. Throughout an almost two-hour interview, he repeatedly denied that he was there to have sex with Anna, insisting he was only interested in Jay. He would later testify that he gave police permission "to look through my car, my phone, my tablet, all my Internet history. I gave them my passwords. I gave them everything to look forward to see if there's

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

anything about children in any of my e-mails or anything, any of my computer history." Report of Proceedings (RP)[2] at 636. He told the officers interviewing him that he had used Craigslist before and had made Craigslist posts seeking men. He said he was "curious about guys" although so far he had not "done nothing." Ex. P12 at 139.

Mr. Borseth was charged with attempted first degree rape of a child, attempted commercial sexual abuse of a minor, and possession of a controlled substance (methamphetamine).

In discussion of motions in limine before trial, the prosecutor told the court that the State anticipated presenting evidence that Mr. Borseth had previously arranged sex online and posted his interest in sex with men, as disclosed in the interview following his arrest. Defense counsel responded, "We can kind of shorten this down. We're not going to be seeking to suppress the fact that Mr. Borseth has used Craigslist for other liaisons. We don't have any objection to that." RP at 92. Asked by the prosecutor if he was referring to Mr. Borseth's confession, defense counsel answered, "Correct." *Id.*

During the four-day jury trial, the State called as witnesses eight law enforcement officers and a forensic expert from the Washington State Patrol Crime Laboratory, to testify that the controlled substance found in Mr. Borseth's possession was methamphetamine. In the defense case, Mr. Borseth testified on his own behalf.

---

[2] All references are to the report of trial proceedings taking place in April 2018.

Mr. Borseth testified that he was only interested in Jay and expressed that interest many times in their communications. He testified that when he realized Jay was offering sex with her children, he did not stop the conversation because he wanted to "buy them some food or whatever, talk to her about what she's trying to do, tell her it ain't the right way to make money." RP at 655. He claimed he offered methamphetamine to her because she could sell it to make money. Mr. Borseth agreed to the terms Jay set out to have sex with Anna because he was trying to "get in the door" with Jay. RP at 680.

During cross-examination, the prosecutor asked Mr. Borseth about his experience posting ads on Craigslist, asking whether they included offers to perform different sexual acts with men. Mr. Borseth disavowed offering anything, stating "I was just curious, and I didn't do nothing with nobody." RP at 716.

During closing argument the prosecutor attacked Mr. Borseth's credibility, telling jurors that the only time Mr. Borseth told the truth during his testimony was when he was going through the text messages, the phone call, and the e-mails. When the defense objected, the judge reminded the jury that the attorneys' statements were not evidence.

Defense counsel argued to jurors that Mr. Borseth was only interested in Jay. He urged them to consider that when interviewed by police, Mr. Borseth admitted that he had methamphetamine and revealed that he was curious about same-sex activities, but throughout what was a two-hour interrogation he never conceded interest in Anna.

4

The jury found Mr. Borseth guilty as charged. At sentencing, the court rejected the defense argument that his three crimes were the same criminal conduct. Noting that Mr. Borseth had no prior felonies, the trial court imposed a low end sentence. It imposed a one-year sentence enhancement to the rape count provided by RCW 9.94A.533(9) because it involved sexual conduct with a child for a fee. The court ordered Mr. Borseth to pay legal financial obligations that included a $200 criminal filing fee and a $1,650 assessment for commercial sexual abuse.

Mr. Borseth appeals.

## ANALYSIS

I.    RELIANCE ON TEXT MESSAGES AND E-MAILS IN THE NET NANNY OPERATION DID NOT VIOLATE THE "PRIVACY ACT." MR. BORSETH'S ALTERNATIVE ARGUMENTS THAT (1) HIS TRIAL LAWYER PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL AND (2) THE VIOLATION CONSTITUTED OUTRAGEOUS GOVERNMENT MISCONDUCT FAIL

Mr. Borseth identifies provisions of the Privacy Act that permit law enforcement recording of conversations with one-party consent and persuasively argues that the officers did not comply with those provisions in connection with the e-mail and text communications. The problem with his argument is that with e-mails and text messages (unlike telephone conversations) the government had no need to rely on the one-party consent provisions. Like other users of e-mail and text messaging, Mr. Borseth impliedly consented to the recording of his e-mail and text communications.

A violation of the Privacy Act requires "(1) a private communication transmitted by a device, that was (2) intercepted or recorded by use of (3) a device designed to record and/or transmit (4) without the consent of all parties to the private communication." *State v. Roden*, 179 Wn.2d 893, 899, 321 P.3d 1183 (2014). While the first three elements of a violation are generally true of e-mails, the fourth is not. The recipient of an e-mail does not violate the Privacy Act because the sender, as a user of e-mail, will understand that his e-mail messages will be recorded on the computer of the recipient. *State v. Townsend*, 147 Wn.2d 666, 676, 57 P.3d 255 (2002). The sender "is properly deemed to have consented to the recording of those messages." *Id.* The same is true of text messages. *State v. Racus*, 7 Wn. App. 2d 287, 299-300, 433 P.3d 830 (2019). If the parties consent to the recording, there is no violation of the Privacy Act and the recording is admissible. *Id.* at 300.

Mr. Borseth recognizes that we could have refused to address this alleged error since it was not raised in the trial court, *see* RAP 2.5(a), so he makes the alternative argument that his trial lawyer provided ineffective assistance of counsel by failing to move to suppress the e-mail and text communications. To prevail on his ineffective assistance of counsel claim, Mr. Borseth must establish that his trial lawyer's representation was deficient and the deficient representation prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish one prong, the court need not consider the other. *State v. Hendrickson*, 129

6

Wn.2d 61, 78, 917 P.2d 563 (1996). Because law enforcement's reliance on e-mails and text messages did not violate the Privacy Act, deficient representation is not shown.

Finally, a court may dismiss a criminal charge where the State is found to have engaged in outrageous misconduct in violation of a defendant's due process right to fundamental fairness, and Mr. Borseth argues that the officers' conduct (including the asserted violation of the Privacy Act) constitutes outrageous misconduct warranting dismissal of the charges against him. *See State v. Solomon*, 3 Wn. App. 2d 895, 909-16, 419 P.3d 436 (2018). A claim of outrageous government conduct may be raised for the first time on appeal. *State v. Lively*, 130 Wn.2d 1, 18-19, 921 P.2d 1035 (1996).

In assessing whether there has been a violation of due process, courts review the totality of the circumstances. *Id.* at 21. The *Lively* court identified the following factors for consideration:

> [(1)] whether the police conduct instigated a crime or merely infiltrated ongoing criminal activity; [(2)] whether the defendant's reluctance to commit a crime was overcome by . . . persistent solicitation; [(3)] whether the government controls the criminal activity or simply allows for the criminal activity to occur; [(4)] whether the police motive was to prevent crime or protect the public; [(5)] whether the government conduct itself amounted to criminal activity or conduct "repugnant to a sense of justice."

*State v. Markwart*, 182 Wn. App. 335, 351, 329 P.3d 108 (2014) (quoting *Lively*, 130 Wn.2d at 22 (alterations original)). "Dismissal based on outrageous conduct is reserved for only the most egregious circumstances. 'It is not to be invoked each time the

7

government acts deceptively.'" *Lively*, 130 Wn.2d at 20 (quoting *United States v. Sneed*, 34 F.3d 1570, 1577 (10th Cir. 1994)).

In *Solomon*, the court upheld a trial court's dismissal of charges stemming from an operation similar to Net Nanny under an abuse of discretion standard where the defendant tried to disengage seven times, but each time the undercover officer drew him back using "graphic and highly sexualized language." 3 Wn. App. 2d at 909-16. Division One of this court agreed with the lower court that this amounted to outrageous police conduct because the police overcame the defendant's reluctance with constant solicitation that was manipulative because the messages were so sexualized. *Id.* at 913-15.

The deception in this case was in line with a typical sting operation. Unlike in *Solomon*, Mr. Borseth never said he was not interested in sexual contact with Anna. At most, he can point to messages in which he flirted with Jay. Rather than try to disengage, he actively participated in discussion of what he and Anna might do and took the conversation with Jay in graphic and sexual directions, sending nude photos of himself and bringing up specific sex acts. It is apparent from the communications that Mr. Borseth's reluctance to commit a crime was not overcome by persistent police solicitation.

II.     THE EVIDENCE OF ATTEMPTED COMMERCIAL SEXUAL ABUSE OF A MINOR WAS
        SUFFICIENT

Mr. Borseth's next assignment of error is that there was insufficient evidence of attempted commercial sexual abuse of a minor under former RCW 9.68A.100(1)(c) (2013).[3] At the time of Mr. Borseth's offense conduct, the statute provided:

> (1) A person is guilty of commercial sexual abuse of a minor if:
> . . . .
> (c) He or she solicits, offers, or requests to engage in sexual conduct with a minor in return for a fee.

LAWS OF 2013, ch. 302, § 2.[4] A person is guilty of criminal attempt if, with intent to commit a specific crime, the person does any act that is a substantial step toward committing the completed crime. RCW 9A.28.020(1); *State v. Aumick*, 73 Wn. App. 379, 383, 869 P.2d 421 (1994), *aff'd*, 126 Wn.2d 422, 894 P.2d 1325 (1995). Washington courts have defined a "substantial step" as "an act strongly corroborative of the actor's criminal purpose." *State v. Newbern*, 95 Wn. App. 277, 287, 975 P.2d 1041 (1999).

The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068

---

[3] Mr. Borseth originally assigned error to the State's failure to elect which of two alternative means of committing the crime, both of which were charged, had been committed. The State pointed out in response that only one means was addressed in the jury instructions. Mr. Borseth now concedes that the State effectively made an election.

[4] Effective July 23, 2017, "fee" was replaced by "anything of value." RCW 9.68A.100.

(1992). "A claim of insufficiency admits the truth of the State's evidence and all

inferences that reasonably can be drawn therefrom." *Id.*

Mr. Borseth argues that his and Jay's communications fell short of an agreement

under contract law, and an assurance that he would "contribute" and bring cash and

methamphetamine is not evidence of a "fee."

The advertisement to which Mr. Borseth responded stated, "we appreciate

generosity," Ex. P2, and Jay covered that further when she and Mr. Borseth text

messaged (given the numerous misspellings, we have not made corrections):

> [Jay:] ill need to talk to you first. to go over rules. are you good with gifts or donations.??? and she is avialbel tonight for sure.
> [Mr. Borseth:] Like how much!?
> [Jay:] it depends on what you want and wht you look like. lol we jsut moved here so anythig helps. what did you want to experience if you want we can talk about that on the phone if makes you feel better. . . .
> [Mr. Borseth:] Do you get high?
> [Jay:] um yeah!!
> [Mr. Borseth:] I'll get you high.
> . . . .
> [Jay:] so berfore we call need ot make sure wht you want oso i dont waste my time are you offering up some money and the meth or just the meth and you nknow you cant have sex with just me this is about my daughter
> [Mr. Borseth:] I have cash too. And meth. And I'm in it for The adventure

Ex. P4. Mr. Borseth was carrying about $135 and methamphetamine when he arrived

and was arrested.

RCW 9.68A.100(1)(c) does not require a contract or agreement, only a

solicitation, offer, or request. And because Mr. Borseth was charged with attempt, the

10

jury needed to find only that he took a substantial step to that end. Reasonable jurors could find that Mr. Borseth offered to bring cash, did bring cash, and expected to pay it in return for sexual conduct with Anna.

Finally, Mr. Borseth argues that the means of committing the crime addressed in subsection (c) is "ambiguous at best" and appears to mean that a violation occurred if *Mr. Borseth* was expecting to be paid a fee. Br. of Appellant at 23. Our Supreme Court's binding interpretation of a former version of this statute holds otherwise, however. In *State v. Farmer*, the former statute, which provided that "[a] person is guilty of patronizing a juvenile prostitute if that person engages or agrees or offers to engage in sexual conduct with a minor in return for a fee" unambiguously meant that "the individual soliciting the prostitute or the payor of the fee violates the statute." 116 Wn.2d 414, 424-25, 805 P.2d 200, 812 P.2d 858 (1991) (emphasis omitted) (quoting former RCW 9.68A.100 (1989)). *And see* RCW 9.68A.001 (identifying as a purpose of chapter "to hold those who pay to engage in the sexual abuse of children accountable").

The evidence was sufficient.

III.    MR. BORSETH DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL LAWYER DID NOT OBJECT TO EVIDENCE ABOUT HIS PRIOR USE OF CRAIGSLIST

Mr. Borseth next argues that his trial lawyer's failure to request an ER 404(b) hearing in connection with the State's proposed use of other Craigslist contacts by Mr. Borseth was ineffective assistance of counsel. He contends the contacts had nothing to

do with minor children and jurors who disapproved of same-sex relations might have viewed Mr. Borseth's interest as indicative of an interest in aberrant sex.

"Courts engage in a strong presumption counsel's representation was effective," and "legitimate trial strategy or tactics cannot be the basis for a claim of ineffective assistance of counsel." *McFarland*, 127 Wn.2d at 335-36 (citing *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994)).  We presume that trial counsel's waiver of any objection to the evidence of Mr. Borseth's prior Craigslist liaisons was strategic here. Sting operation prosecutions of this sort are difficult to defend.  From the outset, Mr. Borseth's lawyer sought to portray him as sexually adventurous, but only with other adults.  During voir dire, he told prospective jurors that there might be references to sexual conduct between consenting adults that some might disagree with, and asked them if it would affect how they approached the case.  Every juror asked said it would not influence their decision making, and three of them were put on the jury.

In closing argument, defense counsel used Mr. Borseth's willingness during the police interview to disclose interest in adult sexual conduct that might not be viewed as mainstream as a reason jurors should believe him when he said he had no interest in having sex with a minor.  He emphasized that Mr. Borseth had nothing to hide, reminding jurors, "Mr. Borseth said that you can look through my phone.  You can look at my tablet.  He gave them permission to do that."  RP at 810.

12

The strategy was somewhat undermined when, during cross-examination, Mr. Borseth proved reluctant to admit to sexual adventurousness. That does not mean that it was not a legitimate trial strategy. Ineffective assistance of counsel is not shown.

IV.     PROSECUTORIAL MISCONDUCT IS NOT SHOWN

Mr. Borseth's final trial-related assignment of error is to the closing argument of the prosecutor to which he objected. It arose in the prosecutor's summary, after the prosecutor had thanked jurors for their attention, and unfolded as follows:

> [PROSECUTOR]: . . . [W]hat I'm going to ask you to do when you go back to that jury room, know that Mr. Borseth told the truth in this case. He told it once when he was going through the text message, the phone call, the e-mail, and that's the only time he told the truth in this case—
>
> [DEFENSE COUNSEL]: I'm going to object to that, Your Honor.
>
> THE COURT: I'm going to remind the jury that this is closing arguments. What the attorneys say are not evidence or instructions.
>
> [PROSECUTOR]: The evidence shows that you should not believe Mr. Borseth. Believe what he did, not what he said here in court.

RP at 794.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Comments are prejudicial only where "there is a substantial likelihood the misconduct affected the jury's verdict." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

13

Prosecutors are not to express a personal opinion as to a defendant's guilt or a witness's credibility independent of a belief jurors may arrive at based on evidence in the case. *State v. Lindsay*, 180 Wn.2d 423, 437, 326 P.3d 125 (2014). They may "argue inferences from the evidence, including inferences as to why the jury would want to believe one witness over another." *State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996). When determining whether a prosecutor improperly expressed a personal opinion, the reviewing court looks at the ostensible statement of opinion in the context of the entire argument. *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983). "Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 561, 397 P.3d 90 (2017) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 54, 134 P.3d 221 (2006)).

The prosecutor's objected-to statement was made at the conclusion of his closing argument. In earlier argument, he had reviewed the evidence supporting the State's case and told jurors at one point,

> The Judge gave you some information on credibility. She told you're the only judges of it. Doesn't matter what I think. It doesn't matter what [defense counsel] thinks. Except on matters of the law, it doesn't matter even what the Judge thinks. It matters what you folks think.

RP at 786.

14

The prosecutor did not "clearly and unmistakably" couch the statement to which the defense objected in personal opinion terms. In context, he can be understood as suggesting a logical inference the jurors should draw from the evidence he had recapped. Misconduct is not shown.

V.     ALLEGED SENTENCING ERRORS

Mr. Borseth asserts three sentencing errors. One—that the trial court imposed an uncharged one-year sentencing enhancement in reliance on RCW 9.94A.533(9)—is conceded by the State. Another—that the trial court improperly imposed legal financial obligations—is conceded in part: the State agrees that the trial court should not have imposed the $200 criminal filing fee. Despite Mr. Borseth's failure to object to the fee at sentencing, the State does not object if we remand with directions to strike that fee.

*Same criminal conduct.* Turning to alleged sentencing errors the State does not concede, Mr. Borseth contends the trial court erred by refusing to treat the commercial sexual abuse of a minor and attempted rape of a child offenses as the same criminal conduct. For sentencing purposes, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." RCW 9.94A.589(1)(a). "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* If any of the

15

three elements are not established, the offenses are not the "same criminal conduct."

*State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

"'A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law.'" *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999) (quoting *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993)). "Under this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Aldana Graciano*, 176 Wn.2d at 537-38.  A defendant bears the burden of establishing that offenses amount to the same criminal conduct.  *Id.* at 538-40.

Mr. Borseth argued same criminal conduct at sentencing and the trial court explained why it viewed the offense conduct for the two sex offenses as separate:

> Looking at the intent, the time and place and the same victim, I'm going to have to follow what the State indicated is that the commercial sexual abuse of the minor happened while he's texting from work and making these arrangements, and then appearing at the house is the attempted rape of the child.

RP at 837.

The evidence presented was that between 10:30 a.m. and 11:57 a.m. on the day of Mr. Borseth's arrest, Jay and Mr. Borseth exchanged text messages about money and methamphetamine being delivered in connection with the upcoming sexual interaction with Anna.  Mr. Borseth argues that the substantial step for both attempt crimes was his

16

arrival at Jay's fictitious home in the evening. But the trial court clearly found that while the substantial step for *attempted rape* occurred at that time, the substantial step for *attempted commercial sexual abuse* occurred in the morning, when Mr. Borseth, then at work, texted that he would bring cash and methamphetamine. Because the offense only requires a solicitation, offer, or request, it is complete when an offer is made. The trial court's view of when and where the offense conduct occurred is supported by the record.

*Commercial sexual abuse fee.* Under RCW 9.68A.105, courts are required to impose a $5,000 fee on defendants convicted of commercial sexual abuse of a minor. RCW 9.68A.105(b) states that a "court may not reduce, waive, or suspend payment of all or part of the fee assessed unless it finds, on the record, that the adult offender does not have the ability to pay in which case it may reduce the fee by an amount up to two-thirds of the maximum allowable fee." The trial court found that Mr. Borseth did not have the ability to pay and imposed a reduced fee of $1,650.

Mr. Borseth contends that the fee is a "cost" within the meaning of RCW 10.01.160(3), which cannot be imposed at all on an indigent defendant. But "costs" are limited by RCW 10.01.160(2) to "expenses specially incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision." Mr. Borseth offers no argument that the fee fits within that limited concept of "cost." Clearly it does not; under RCW 9.68A.105(2), the fee

No. 36230-2-III
*State v. Borseth a/k/a Fishel*

"must be used for local efforts to reduce the commercial sale of sex." The court properly imposed the fee, reduced in light of Mr. Borseth's inability to pay.

We affirm the convictions and remand with directions to make the ministerial corrections of striking the one-year sentence enhancement and the criminal filing fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, C.J.

18