[No. 21827-5-II.    Division Two.    January 9, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE
CALDWELL OLLENS, *Appellant*.

*Patricia A. Pethick*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Barbara L. Corey-Boulet, Deputy*, for respondent.

Hunt, J. — ▇ Lawrence Ollens appeals his convictions for residential burglary and robbery, arguing that his detention and arrest were illegal, and that evidence should have been suppressed. He also argues that the trial court erred in determining him to be a persistent offender because he did not receive a juvenile decline hearing under Washington law before his 1971 conviction,[1] used as one of the "three strikes."

We affirm the trial court's denial of Ollens' motion to suppress, affirm his conviction, and reverse the persistent offender determination.

## FACTS

On April 19, 1994, police arrested Ollens on suspicion of robbery and burglary. Opal Maloney called 911 and reported that a man had entered her home, pushed her down, threatened to shoot her, and took her wallet. She gave the police a detailed description of the suspect—a black male with a mustache, approximately five feet nine inches tall, in his forties, wearing a green jacket, light gray pants, and a baseball cap. Within 10 minutes, police spotted a man matching the robber's description a few blocks from Maloney's home. This man appeared to be avoiding detection.

Officer Lawrence Liu of the Tacoma Police Department exited his police vehicle, drew his gun, and ordered the man to stop walking. Officers Lance Larson and Michael

---

[1] Ollens challenges the constitutionality of the Persistent Offender Act, Laws of 1994, ch. 1 (Initiative 593). But after Ollens filed his briefs, the Washington Supreme Court addressed similar challenges and held the act constitutional as enacted and as applied. *See State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996); *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996); *State v. Manussier*, 129 Wn.2d 652, 921 P.2d 473 (1996), *cert. denied*, 117. S. Ct. 1563, 137 L. Ed. 2d 709 (1997). Accordingly, Ollens' arguments are moot and we do not address them.

Aratani arrived and handcuffed, patted down, and placed the man in a patrol car. An identification card was produced, identifying the man as Lawrence Ollens.[2]

Meanwhile, other officers went to Maloney's home to investigate her report. Upon hearing that a suspect had been detained, the officers took Maloney to the scene to see if she could identify Ollens as the man who robbed her. The officers drove Maloney past Ollens, who was standing with officers in uniform, next to a patrol car, handcuffed, with his green jacket over his shoulders and his baseball cap on his head. Without noticing the handcuffs, Maloney positively identified Ollens as the robber.

Ollens was placed under arrest and searched. He had the same amount of money on his person as taken from Maloney. Fingerprints found at Maloney's home were later matched with Ollens' prints.

Ollens moved to suppress the money and the fingerprints, contending the initial stop exceeded the scope permissible under *Terry*[3] and was, therefore, an arrest. He argued that there was no probable cause for the arrest and that any evidence gathered as a result of the arrest should be suppressed. He also argued that the identification at the scene of the arrest was unconstitutionally suggestive.

At the conclusion of a CrR 3.6 hearing, the trial court denied Ollens' motion to suppress. At trial, a jury found Ollens guilty of robbery in the first degree and burglary in the first degree. The trial court found Ollens to be a persistent offender under RCW 9.94A.030(27) and sentenced him to life in prison under RCW 9.94A.120, Washington's "three strikes" law.[4] One of Ollens' "strikes" is a 1971 Michigan

---

[2]None of the officers testified that they personally removed, or saw anyone else remove, a wallet or Washington identification card from Ollens' pants pocket.

[3]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[4]RCW 9.94A.120(4) reads: "A persistent offender shall be sentenced to a term of total confinement for life without the possibility of parole . . . ."

conviction, to which he pleaded guilty in adult court, although he was 17 when he committed the crime.

## ANALYSIS
### Persistent Offender Status

Ollens argues that an out-of-state adult conviction obtained before a defendant turns 18 years of age is not a conviction "as an offender" under the RCW 9.94A.030(27) definition of "persistent offender." Ollens argues that, for his 1971 conviction to be "as an offender," he must have had a decline hearing under RCW 13.40.110. Under his reading of the statute, no foreign conviction of a juvenile in adult court could ever be considered a strike under RCW 9.94A.[5] We agree.

A *persistent offender* is an "offender" who:

(a)(i) Has been convicted in this state of any felony considered a most serious offense; and

(ii) Has, before the commission of the offense under (a) of this subsection, been convicted *as an offender* on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.360 . . . .

RCW 9.94A.030(27) (emphasis added).

An "offender" is defined as

a person who has committed a felony established by state law and is eighteen years of age or older or is less than eighteen years of age but whose case . . . has been transferred by the

---

[5]The State's only argument in response to Ollens' contention is that Ollens failed to assign error to the trial court's finding that Ollens was "properly tried as an adult" in Michigan and therefore cannot challenge whether the conviction was obtained after a decline hearing. But the trial court did not determine whether Ollens was "properly" treated as an adult; it simply found that Ollens was *"treated as an adult."* Ollens does not argue that the conviction was not in adult court or that the court did not treat him as an adult. Rather, he argues that this foreign adult conviction cannot be counted as a conviction "as an offender" under RCW 9.94A.030(25) and (27).

appropriate juvenile court to a criminal court *pursuant to RCW 13.40.110.*

RCW 9.94A.030(25) (emphasis added).

A statute is ambiguous if it is susceptible of two or more reasonable interpretations. *State v. McGee,* 122 Wn.2d 783, 787, 864 P.2d 912 (1993). "Where [a] statute is clear, courts may not engage in statutory construction or consider the rule of lenity." *State v. Hahn,* 83 Wn. App. 825, 832, 924 P.2d 392 (1996), *review denied,* 131 Wn.2d 1020 (1997) (citing *State v. Bolar,* 129 Wn.2d 361, 366, 917 P.2d 125 (1996)). "Plain language does not require construction." *State v. Wilson,* 125 Wn.2d 212, 217, 883 P.2d 320 (1994). "When interpreting a criminal statute, a literal and strict interpretation must be given." *Wilson,* 125 Wn.2d at 216-17. When construing an unambiguous statute we look to the wording of the statute, not to outside sources such as legislative intent.

RCW 9.94A.030(27) is not ambiguous; its language is specific and is not susceptible of two meanings or interpretations. It expressly includes within the definition of "offender" only those juveniles for whom a decline hearing was conducted pursuant to RCW 13.40.110. It makes no mention of out-of-state juvenile decline proceedings; rather it refers solely to the Washington statutory procedure.[6]

Reading together the language of RCW 9.94A.030 (27)(a)(ii) and (25), the Legislature clearly intended that

---

[6]In fact, no mention is even made of certain violent crimes now automatically triable in adult court for juveniles over 15 years of age. RCW 13.04.030(1)(e)(iv) provides, in part, that juvenile courts have exclusive original jurisdiction over all proceedings relating to juveniles, unless the juvenile is 16 or 17 years old and the alleged offense is (a) a serious violent offense as defined in RCW 9.94A.030, or (b) a violent offense as defined in RCW 9.94A.030, and the juvenile has a criminal history. In such cases, the adult criminal court has exclusive original jurisdiction. A "serious violent offense" is a subcategory of violent offense and means:

Murder in the first degree, homicide by abuse, murder in the second degree, manslaughter in the first degree, assault in the first degree, kidnapping in the first degree, or rape in the first degree, assault of a child in the first degree, or an attempt, criminal solicitation, or criminal conspiracy to commit one of these felonies . . . .

RCW 9.94A.030(31)(a).

out-of-state adult felony convictions be included as prior offenses for purposes of determining persistent offender status. But it did not choose the broader definition for prior convictions of juveniles under the age of 18; instead it restricted such prior convictions to those transferred to juvenile court pursuant only to the State of Washington's statutory procedures set forth in RCW 13.40.110. RCW 13.40.110 makes no reference to comparable out-of-state decline procedures.

The Legislature could have added a phrase specifically including out-of-state convictions for juveniles convicted as adults "pursuant to procedures comparable to RCW 13.40.110," as it did with the "comparable offense" language it employed in the offender score statute, RCW 9.94A.360(3).[7] Or the Legislature could have defined "offender" more broadly to include "a person who is less than eighteen years of age but whose case has been transferred by the appropriate juvenile court to an adult criminal court." But it did not.

Clearly in enacting the Persistent Offender Statute, the Legislature wanted to impose a life sentence on a person who committed a third serious felony.[8] RCW 9.94A.030 (27)(a)(ii) refers to felonies "elsewhere" that in Washington would be considered "most serious offenses" and "would be included in the offender score under RCW 9.94A.360." For purposes of calculating offender scores, "[o]ut-of-state convictions for offenses shall be classified according to the

---

[7]This subsection applies to both adult and juvenile prior convictions. "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.360(3).

[8]The purpose and intent of the Sentencing Reform Act of 1981 and the Persistent Offender Accountability Act give some guidance. They clearly state their purpose to ensure appropriate punishment of offenders based on their criminal history and to protect the community from the most dangerous and persistent offenders. See RCW 9.94A.010 and .392. Thus, if certain most serious out-of-state convictions were not counted, these purposes would be thwarted.

But RCW 9.94A.392(2)(c) also states its intention to set sentencing practices that "persistent offenders can understand." Thus, if the statute provides that the offender must have had a decline hearing under RCW 13.40.110, most offenders will not necessarily read such language to mean the equivalent of a State of Washington decline hearing.

comparable offense definitions and sentences provided by Washington law. . . ." RCW 9.94A.360(3). This section does not differentiate between adult convictions committed before the age of 18 or after the age of 18 for purposes of offender score calculation. Ollens' Michigan conviction was equivalent to robbery in the second degree under Washington law, "a most serious offense." RCW 9.94A.030(23)(o). Thus, under RCW 9.94A.360, Ollens' 1971 Michigan conviction, as a juvenile tried as an adult, would be counted in his offender score for sentencing purposes, even though not usable to establish persistent offender status.

██ Inclusion of prior juvenile convictions to establish "persistent offender" status would certainly have furthered the Legislature's objective in more severely punishing recidivists. But whether to include prior out-of-state juvenile convictions was and is the choice of the Legislature, not the courts.[9] We cannot read such allegedly omitted language into the statute[10] or change the wording of the

---

[9]Michigan seems to employ safeguards for juvenile decline hearings similar to Washington's. In 1971, Michigan had a statute very similar to Washington's decline statute. An offender over the age of 15 could be tried as an adult if the juvenile court, after a hearing, decided the adult court should have jurisdiction. MICH. STAT. ANN. § 27.3178(598.4)(1969). This decision was to be based on consideration of the juvenile's prior record, the seriousness of the charged offense, whether the juvenile would benefit from juvenile rehabilitation programs, and the public welfare. MICH. STAT. ANN. § 27.3178(598.4)(4)(1969). Similarly, Washington's decline statute requires the court to consider the best interest of the child and the public welfare when deciding whether to decline jurisdiction and send the juvenile to adult court. RCW 13.40.110(2). Relatively the same safeguards are in place under both statutes, with Michigan's statute seemingly even more detailed and protective of the juvenile's interests.

[10]In *State v. Hennings*, 129 Wn.2d 512, 919 P.2d 580 (1996), the court explained that in certain circumstances, if the Legislature inadvertently omitted language and the oversight renders the section inconsistent, the court may insert language into the statute. *Hennings*, 129 Wn.2d at 522. Where "the omission created a contradiction in the statute that rendered the statute absurd and undermined its sole purpose. . . . we have supplied the missing language in order to effectuate the purpose of the legislation." *Hennings*, 129 Wn.2d at 524 (citing *State v. Taylor*, 97 Wn.2d 724, 729-30, 649 P.2d 633 (1982)). In the case of juvenile offenses, the legislative language is very specific, leaving no room for such judicial interpretation. The Legislature has seen fit to include for persistent offender purposes only those prior juvenile offenses declined pursuant to RCW 13.40.110, an exclusive Washington State procedure.

statute "by judicial proclamation in the guise of liberal construction." *Salts v. Estes,* 133 Wn.2d 160, 162, 943 P.2d 275 (1997). *See also Shum v. Department of Labor & Indus.,* 63 Wn. App. 405, 409, 819 P.2d 399 (1991).

We must give effect to all language in the statute. *City of Seattle v. Fontanilla,* 128 Wn.2d 492, 498, 909 P.2d 1294 (1996). The State's position ignores RCW 13.40.110's statutory link between prior juvenile adult-court convictions and the definition of "offender" for "persistent offender" purposes set forth in RCW 9.94A.030(27). Nothing in the statute references properly declined convictions from foreign jurisdictions and we will not add such language.

Accordingly, we vacate the persistent offender finding under RCW 9.94A.030 and remand for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and SEINFELD, J., concur.

Reconsideration denied May 6, 1998.