[No. 25895-1-II.   Division Two.   July 15, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. GEOFFREY LEON CARPENTER, *Appellant*.

*Robert M. Quillian*, for appellant.

*Jeremy R. Randolph, Prosecuting Attorney*, for respondent.

HOUGHTON, J. — On February 2, 2000, a jury convicted Geoffrey Carpenter of two counts of second degree robbery. Carpenter appeals from his March 22, 2000 sentence to life imprisonment without possibility of parole as a persistent offender, arguing that because the adult court did not have jurisdiction over him as a juvenile when it convicted him of second degree assault in 1996, the conviction cannot count as a prior conviction under the Persistent Offender Accountability Act (POAA).[1] We agree and reverse and remand for resentencing.

## FACTS[2]

On two occasions in late 1999, Carpenter took property from another with threats of force. On January 28, 2000, by

---

[1] Former RCW 9.94A.030(27) (1998). The POAA is known as the "three strikes and you're out" law. *State v. Thorne*, 129 Wn.2d 736, 746, 921 P.2d 514 (1996).

[2] A timeline clarifies the procedural facts before us.

| April 12, 1996 | The State charges 17-year-old Carpenter with first degree assault. |
|---|---|
| June 5, 1996 | Seventeen-year-old Carpenter pleads guilty to second degree assault in adult court (no declination hearing is held)—later, the March 22, 2000 sentencing court counts this as strike one. |
| October 13, 1999 | Carpenter receives a conviction of first degree burglary—later, the March 22, 2000 sentencing court counts this as strike two. |
| October 20 to November 15, 1999 | Carpenter commits second degree robbery—count II of January 28, 2000 amended information. |
| November 20, 1999 | Carpenter commits second degree robbery—count I of January 28, 2000 amended information. |
| December 8, 1999 | State seeks retroactive declination of juvenile court jurisdiction on Carpenter's 1996 adult court conviction. |
| January 28, 2000 | Adult court orders declination of juvenile court jurisdiction on Carpenter's 1996 charge "nunc pro tunc" to April 12, 1996. |
| February 2, 2000 | A jury convicts Carpenter of two robbery counts. |
| March 22, 2000 | Over defense objection, court counts 1996 and 1999 convictions as two strikes and sentences Carpenter as a persistent offender to life imprisonment without possibility of parole. |

amended information, the State charged Carpenter with two counts of second degree robbery. A jury convicted him as charged. At sentencing, the trial court determined that Carpenter had two prior convictions counting as sentencing strikes: a 1996 second degree assault conviction, a violation of RCW 9A.36.021; and a 1999 first degree burglary conviction, a violation of RCW 9A.52.020.

Adding the two prior convictions to his current conviction, the trial court then sentenced Carpenter as a persistent offender, under former RCW 9.94A.030(27) (1998), to life imprisonment without parole under the POAA. Carpenter does not dispute that his 1999 burglary conviction constitutes a strike. Thus, we limit the facts to the April 12, 1996 assault charge.

On April 12, 1996, the State charged then 17-year-old Carpenter with first degree assault. RCW 9A.36.011. At that time, under former RCW 13.04.030(1)(e)(iv)(A) (1996), a juvenile facing a first degree assault charge received an automatic declination of juvenile court jurisdiction.

On June 5, 1996, Carpenter pleaded guilty to a reduced charge of second degree assault while armed with a deadly weapon, a violation of RCW 9A.36.021. After amending the charge to one for which juvenile court jurisdiction was not automatically declined, the State failed to seek a declination of juvenile court jurisdiction before pursuing Carpenter's conviction in adult court.[3] RCW 13.40.110(1)(b).

It was not until December 8, 1999, after the State charged Carpenter with two robbery counts, that it sought declination of juvenile court jurisdiction over the 1996 assault charge.[4] In seeking declination, the State relied on

---

[3] At the time, second degree assault was not an enumerated crime subject to automatic juvenile court declination.

[4] According to *Mora*, the State may seek declination in such circumstances. *State v. Mora*, 138 Wn.2d 43, 53-54, 977 P.2d 564 (1999) (when the State charges a juvenile with a crime the legislature defines as subject to automatic declination, and the State later amends the charge to one that is not automatically declined, the matter should be transferred to juvenile court for a declination hearing).

RCW 13.40.110[5] and *Dillenburg v. Maxwell*, 70 Wn.2d 331, 355, 413 P.2d 940, 422 P.2d 783 (1966) (faulty transfer from juvenile court requires remand to determine whether transfer was proper), *cert. denied*, 386 U.S. 998 (1967).

At the January 28, 2000 declination hearing, the trial court determined that *State v. Mora*, 138 Wn.2d 43, 977 P.2d 564 (1999), allowed late entry of a declination order. *Mora*, 138 Wn.2d at 54 (remand for declination hearing appropriate when no hearing was held before juvenile was convicted in the adult court). After argument, the court entered findings of fact and conclusions of law that Carpenter should be transferred to adult court and declined juvenile court jurisdiction over Carpenter "nunc pro tunc"[6] to April 12, 1996.[7]

---

[5] RCW 13.40.110 states:

(1) The prosecutor, respondent, or the court on its own motion may, before a hearing on the information on its merits, file a motion requesting the court to transfer the respondent for adult criminal prosecution and the matter shall be set for a hearing on the question of declining jurisdiction. Unless waived by the court, the parties, and their counsel, a decline hearing shall be held when:

. . . .

(b) The respondent is seventeen years of age and the information alleges assault in the second degree, extortion in the first degree, indecent liberties, child molestation in the second degree, kidnapping in the second degree, or robbery in the second degree . . . .

[6] The trial court incorrectly labeled the order as "nunc pro tunc." A nunc pro tunc order records " 'some prior act of the court which was actually performed but not entered into the record at that time.' " *State v. Nicholson*, 84 Wn. App. 75, 78-79, 925 P.2d 637 (1996) (emphasis omitted) (quoting *State v. Rosenbaum*, 56 Wn. App. 407, 410-11, 784 P.2d 166 (1989)), *review denied*, 131 Wn.2d 1025 (1997). Such an order " 'may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken.' " *Nicholson*, 84 Wn. App. at 79 (quoting *Rosenbaum*, 56 Wn. App. at 411). Nevertheless, the trial court's mischaracterization is irrelevant to our analysis of whether the conviction counts as a "strike." We also note that the trial court may have believed the language appropriate because it was from the dissent in *Dillenburg v. Maxwell*, 70 Wn.2d 331, 356, 422 P.2d 783, *cert. denied*, 386 U.S. 998 (1967).

[7] The State charged Carpenter with first degree assault on April 12, 1996, and he pleaded guilty to an amended charge of second degree assault on June 5, 1996. The nunc pro tunc order was made effective as of April 12, 1996, the date Carpenter was charged, not convicted. But we use the June 5, 1996 conviction date in our analysis.

## ANALYSIS

Carpenter contends that the trial court erred in sentencing him to life imprisonment without possibility of parole as a persistent offender. He argues that the adult court did not have jurisdiction over him on the 1996 assault until the January 28, 2000 declination hearing. And because the adult court lacked jurisdiction until January 28, 2000, he was not convicted of second degree assault until that date. Thus, Carpenter argues, for purposes of sentencing under the POAA, he did not have two prior convictions that counted as strikes when he committed the 1999 robberies.[8]

■ Initially, the State counters that Carpenter's argument is an improper collateral attack on his 1996 conviction. We disagree. It is not a collateral attack because it is directed to the present use of a prior conviction to prove that Carpenter is a persistent offender. *See State v. Holsworth*, 93 Wn.2d 148, 607 P.2d 845 (1980) (collateral retroactive attack on an invalid plea and its relation to criminal sentencing is appropriate).

Moreover, the State bears the burden of proving by a preponderance of the evidence that two applicable prior convictions exist when seeking a POAA sentence.[9] *State v. Manussier*, 129 Wn.2d 652, 681-82, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997). Thus, Carpenter's argument first raised at sentencing, as it relates to his persistent offender status, is a proper defense to the State's proof and we address it.

Carpenter does not take issue with the adult court's findings of fact and conclusions of law entry at the January

[8] Carpenter also relies on *State v. Ollens*, 89 Wn. App. 437, 949 P.2d 407 (1998), for the proposition that "an 'offender' for purposes of the [POAA] includes only those juveniles for whom a declination hearing was conducted pursuant to RCW 13.40.110." Appellant's Br. at 9. But the distinction between *Ollens* and this case is that Ollens was convicted as a juvenile in a Michigan adult court. Carpenter correctly states *Ollens'* holding that "no foreign conviction of a juvenile in an adult court [can] ever be considered a strike for purposes of the [POAA]." Appellant's Br. at 10. Carpenter is correct, but *Ollens* does not apply here.

[9] As already noted, the State charged Carpenter with first degree assault on April 12, 1996, and he pleaded guilty to second degree assault on June 5, 1996.

28, 2000 hearing. Nor does he take issue with the order declining jurisdiction. Instead, he argues that the conviction cannot be effective until January 28, 2000.

We review de novo the trial court's application of relevant statutes in making sentencing determinations under the POAA. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998). In doing so, we apply common standards of statutory construction. When construing a statute, it is our duty to adopt an interpretation best advancing the legislature's purpose. *State v. Elgin*, 118 Wn.2d 551, 557, 825 P.2d 314 (1992). But with regard to a penal statute, principles of fundamental fairness require us to strictly construe it in favor of the accused. *State v. Wilbur*, 110 Wn.2d 16, 19, 749 P.2d 1295 (1988). Under the POAA, a persistent offender is one who, prior to the commission of the current offense, has been convicted of at least two most serious felony offenses (strikes). Former RCW 9.94A.030(27). Thus, we must decide whether Carpenter's conviction of second degree assault operates as a strike on June 5, 1996, when he pleaded guilty in adult court or as a strike on January 28, 2000, when the court declined juvenile jurisdiction. To answer this question, we turn first to *Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966), *cert. denied*, 386 U.S. 998 (1997).

There are two *Dillenburg* cases involving a juvenile transferred to adult court without a juvenile court order: *Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966) (*Dillenburg* I), *cert. denied*, 386 U.S. 998 (1997), and *Dillenburg v. Maxwell*, 70 Wn.2d 331, 349, 422 P.2d 783 (1967) (*Dillenburg* II), *cert. denied*, 386 U.S. 998 (1997). *Dillenburg* I required a written transfer order from juvenile to adult court and is not relevant to our analysis. *Dillenburg* I, 70 Wn.2d at 340-41.

In *Dillenburg* II, on reconsideration, the juvenile argued that juvenile and adult court jurisdictions differed and if the juvenile court improperly transferred a matter to adult court, any later proceedings were invalid. *Dillenburg* II, 70

Wn.2d at 350-51. The *Dillenburg* II court held that if a transfer from juvenile court is faulty and the individual has turned 18 years of age, the proper relief need not be a new trial, but rather a "de novo hearing before the superior court as to the propriety of the challenged transfer." *Dillenburg* II, 70 Wn.2d at 355.

■ But the court also concluded: "In the event it be determined, as a result of such hearing, that the initiating juvenile court transfer for criminal prosecution was appropriate under all of the circumstances, then the challenged conviction will stand *unless intervening events have so prejudiced the constitutional rights of the convicted person as to compel a different result.*" *Dillenburg* II, 70 Wn.2d at 355 (emphasis added).

Thus, we must determine whether Carpenter's 1996 conviction should be effective as of the June 5, 1996 guilty plea or whether intervening events have greatly prejudiced his constitutional rights compelling a different result.

We first note that without the second degree assault conviction being effective from June 5, 1996, Carpenter could not be sentenced under the POAA on March 22, 2000. And he would not receive life imprisonment without the possibility of parole. Clearly Carpenter's constitutional liberty interests are implicated and he suffers prejudice if the conviction stands as of June 5, 1996. But our inquiry does not end here. We must further determine whether the legislature's definition of "conviction" or "convicted" leads to a result requiring the conviction to operate as of June 5, 1996.

The POAA does not define "conviction." The Sentencing Reform Act of 1981 (SRA) defines "conviction" as an adjudication of guilt under Titles 10 or 13 RCW or a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty. RCW 9.94A.030(11). The SRA definition of "conviction" neither limits nor qualifies the term. But other legislation does.

For example, under RCW 9.41.040(3) (possession of firearms), the legislature defined that a person was "convicted"

when "a plea of guilty has been accepted, or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing or disposition, post-trial or post-factfinding motions, and appeals."

And for purposes of RCW 9.61.230 (telephone harassment), RCW 9A.46.020 (harassment), and RCW 9A.46.110 (stalking), conviction under the harassment statute RCW 9A.46.100 states, "a person has been 'convicted' at such time as a plea of guilty has been accepted or a verdict of guilty has been filed, notwithstanding the pendency of any future proceedings including but not limited to sentencing, posttrial motions, and appeals."

Had the legislature chosen to similarly qualify "conviction" under the POAA or SRA, Carpenter's conviction would stand as of June 5, 1996. But the legislature did not.

■ ■ Ultimately, the burden is on the legislature to categorically clarify what actions expose an individual to penalties and the reasons for which they can be penalized. *State v. Knowles*, 46 Wn. App. 426, 432, 730 P.2d 738 (1986). Because it did not do so, we apply the rule of lenity. Hence, we hold that Carpenter's conviction of second degree assault operates as a strike from January 28, 2000. *Knowles*, 46 Wn. App. at 432 ("[p]enal statutes should be reasonably construed in favor of defendants").

The State urges us to retroactively apply the findings of fact from the January 28, 2000 hearing to the June 5, 1996 guilty plea in "order to leave the conviction standing." Resp't's Br. at 7. But this is incorrect.

Equitable principles require that Carpenter be placed in the same position as if the judicial error had not occurred, so a retroactive entry is appropriate only to remedy the record as to something that occurred, not something that should have occurred. *State v. Smissaert*, 103 Wn.2d 636, 641, 694 P.2d 654 (1985). Although the declination hearing could have occurred earlier, it did not actually occur until January 28, 2000.

Thus, retroactive entry is inappropriate and resentencing should be from date of the amended judgment on declination. *Smissaert*, 103 Wn.2d at 641. Carpenter had only one strike before committing the two counts of robbery, of which he was later convicted on February 2, 2000.

We reverse his sentence under the POAA and remand for resentencing.

BRIDGEWATER and ARMSTRONG, JJ., concur.