943 P.2d 275 (1997)
133 Wash.2d 160
Carl SALTS, a single man, Petitioner,
v.
Cliff ESTES and "Jane Doe" Estes, husband and wife and the marital community composed thereof, Respondents.
No. 64024-6.
Supreme Court of Washington, En Banc.
Argued January 21, 1997.
Decided September 4, 1997.
Reconsideration Denied October 30, 1997.
*276 George M. Riecan & Associates, George M. Riecan, Tacoma, for petitioner.
Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Timothy Whitters, Tacoma, for respondent.
TALMADGE, Justice.
We are asked in this case to determine if service of process upon a person who was merely looking after the defendant's home in his absence was sufficient under our substitute service of process statute, RCW 4.28.080(15). RCW 4.28.080(15) has remained essentially untouched by the Legislature since it was enacted in 1893. What the Legislature has not seen fit to dochange the wording of the statutewe decline to do by judicial proclamation in the guise of liberal construction. The language of RCW 4.28.080(15), permitting service of process at the defendant's usual abode with a person of suitable age and discretion who is then resident therein, should be enforced as it was written. We do not adopt the principle in service of process that "close is good enough," permitting service of process on virtually any person who by happenstance is present in the defendant's home. Consequently, we affirm the Court of Appeals and hold that a person who was a fleeting presence in the defendant's home was not "resident" therein for purposes of RCW 4.28.080(15).

ISSUE
For purposes of RCW 4.28.080(15), is a person who was not living in the defendant's home, but agreed to take in his mail and feed his dog while he was on vacation, amenable to substituted service of process as a resident in the defendant's home?

FACTS
Carl Salts allegedly sustained injuries while working at the home of Cliff Estes in November of 1990. On November 22, 1993, Salts initiated a lawsuit against Estes in the Pierce County Superior Court.[1] Eight days later, Larry Johnson, a process server with ABC-Legal Messengers, went to Estes's home to accomplish service of the summons and complaint.
Johnson met Mary TerHorst at the front door of Estes's home. TerHorst, who was neither related nor married to Estes, briefly spoke to Johnson; Johnson then handed TerHorst a copy of the summons and complaint, and left.
On December 6, 1993, an attorney appeared on Estes's behalf. Subsequently, Estes moved for summary judgment, contending that service of process was insufficient under RCW 4.28.080(15) and that Salts did not commence his action within the three-year statute of limitations of RCW 4.16.080(2).
The record on summary judgment indicates TerHorst was inside Estes's home when Johnson arrived and she answered the door in response to Johnson's knock. TerHorst was looking after Estes's home, at *277 Estes's request, while Estes was out of town for a couple of weeks. TerHorst was at Estes's home over the two-week period for the purpose of feeding his dog, bringing in the mail, and taking care of similar matters. TerHorst spent a total of one to two hours at Estes's home between Estes's departure on vacation and the attempted service of the summons. TerHorst was not the defendant's relative or employee. She never lived at the defendant's home nor did she keep any of her goods there. She was served with the summons and complaint during the few minutes she happened to be in the defendant's home one day.[2]
Johnson also stated in his declaration, "TerHorst said that she was a resident of Cliff Estes' abode." Supplemental Clerk's Papers at 24. TerHorst denies saying that.
The trial court granted Estes's summary judgment motion, holding she was not resident in Estes's home for purposes of RCW 4.28.080(15). The Court of Appeals affirmed the trial court. Salts v. Estes, No. 18415-0-II (Wash.Ct.App. Mar. 15, 1996). We granted review.

DISCUSSION
RCW 4.28.080 describes at length how a summons may be served on a defendant. The statute generally requires personal service of a summons on the defendant, but also permits substituted personal service on the defendant "by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15).
Thus, the statute states three requirements for a valid substituted service of process: (1) the summons must be left at the defendant's "house of his or her usual abode"; (2) the summons must be left with a "person of suitable age and discretion"; and, (3) the person with whom the summons is left must be "then resident therein." The service on TerHorst satisfied the first two requirements of the statute. The third element is at issue in this case.
Even those unlearned in the law would most likely conclude a house of usual abode is somebody's home, even if only on a seasonal basis, and "then resident therein" means a person who is actually living in that house at the time of the service of process. In Wichert v. Cardwell, 117 Wash.2d 148, 812 P.2d 858 (1991), we addressed the meaning of the statutory phrase "then resident therein" and concluded the meaning of resident was too "elastic" to be of much use, quoting McGrath v. Stevenson, 194 Wash. 160, 162, 77 P.2d 608 (1938): "Each of the terms "reside," `residing,' `resident,' and `residence' is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statute in which the term is employed." Wichert, 117 Wash.2d at 151, 812 P.2d 858. Thus, as a substitute for deciding the actual meaning of the word "resident," we concluded in Wichert that the legislative intent behind the substituted service statute was to provide due process, i.e., notice and the opportunity to be heard, quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950): "`The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'"[3]Wichert seems to say it is never necessary for the substituted service to comply with the literal requirements of the statute so long as the plaintiff chooses a method of service reasonably calculated to inform the defendant of the summons. Wichert, 117 Wash.2d at 151, 812 P.2d 858. We held in Wichert that service at the defendants' home on the defendant wife's 26-year old daughter, who only infrequently stayed overnight at her parents' house, resided elsewhere, and was plainly not "then resident therein," was sufficient.
In Sheldon v. Fettig, 129 Wash.2d 601, 919 P.2d 1209 (1996), we held service on the defendant's twelve-year-old brother at the Seattle home of the defendant's parents at a *278 time when the defendant was actually living in Chicago satisfied the statutory requirement that substituted service occur at a defendant's house of usual abode. We decided in Sheldon that "house of usual abode" means "center of one's domestic activity." Id. at 610, 919 P.2d 1209. Thus, a person who actually lives in Chicago can maintain her "center of domestic activity" in Seattle, even if she is there only a few days a month for purposes of Washington's substituted service of process statute. The Court was able to conclude from the facts of Sheldon that the defendant was more likely to receive notice of pendency of a suit at her parents' Seattle home, where she visited maybe four or five times a month as her flight schedule allowed, and where she did not sleep even when visiting, than in the apartment she shared in Chicago with other flight attendants.
Wichert and Sheldon mark the outer boundaries of RCW 4.28.080(15). Precious little would be left of the term "then resident therein" were we to determine substituted service can be obtained on a person who happens to be in the defendant's house only to feed the defendant's dog and check his mail.[4]
Wichert professed an inability to define "resident" with precision, basing its helplessness on McGrath, where the issue before the Court was not the meaning of the term "resident" in the sense of who is a resident. The question was whether a person could have more than one place of residence under a road vacation statute for the purpose of a signing a petition for a road vacation. The Court concluded: "A man can have only one place of residence for voting purposes and certain other purposes, but there is no reason why, within the meaning of the vacation statute ... he may not have more than one place of residence." McGrath, 194 Wash. at 162, 77 P.2d 608. By contrast, the issue in the present case is not where a residence is, but rather who is a resident for purposes of the substituted service statute, an entirely different statute from the road vacation statute the McGrath Court considered.
The answer to "who is a resident" should engender no controversy. Most people would express little confusion over the meaning of "resident." Nevertheless, "When the common, ordinary meaning is not readily apparent, it is appropriate to refer to the dictionary." Zachman v. Whirlpool Fin. Corp., 123 Wash.2d 667, 671, 869 P.2d 1078 (1994). The word "resident" comes from Latin:
The -side of reside has no connection with English side. It comes from the Latin sedere "settle" (source of English sedentary, session, etc. and related to sit). Combination with the prefix re- "back" produced residere "settle back, remain in place, rest," which passed into English via its present participle as resident "settling permanently in place."
JOHN AYTO, DICTIONARY OF WORD ORIGINS 441 (1990). "Resident" means "[r]esiding, dwelling, or having an abode in a place." 8 THE OXFORD ENGLISH DICTIONARY 517-18 (1933). Faithful to the Latin roots of the word, dictionaries uniformly define "resident" to have the sense of settling permanently in place.[5] There are no dictionary definitions anywhere to support the proposition that when a person *279 is present transiently in a home only to feed a dog and bring in the mail in the absence of the owner, that person may be considered a resident of that home. As the Court of Appeals noted, "The concept of who is a `resident' may be elastic, but it at least entails an occupancy of longer duration and substance than Terhorst's was." Salts v. Estes, No. 18415-0-II, slip op. at 5.
Thus, RCW 4.28.080(15) is unambiguous. "Resident" requires something more than "present" in the defendant's usual abode. The Court of Appeals here was correct in determining that nothing in the record establishes Ms. Terhorst as a resident of defendant Estes's house. When the Legislature required in RCW 4.28.080(15) that service be on a person who is "then resident" in the defendant's usual abode, it meant something more than fleeting occupancy.
Although some courts, like Wichert, have generally approved service on close relatives of the defendant who happen to be temporarily in the defendant's home,[6] the usual rule is that service on employees and others who do not reside in the defendant's home does not comport with due process. See, e.g., Hardy v. Kaszycki & Sons Contractors, Inc., 842 F.Supp. 713 (S.D.N.Y.1993) (service defective where there was no evidence person who received service was a resident of defendant's apartment); Hasenfus v. Corporate Air Serv., 700 F.Supp. 58 (D.C.1988) (part-time secretary present at home of defendant, but not living there, not proper recipient of service); Polo Fashions Inc. v. B. Bowman & Co., 102 F.R.D. 905 (S.D.N.Y.1984) (service on defendant's non-live-in housekeeper during her working hours at defendant's house not sufficient because housekeeper did not live there); Zuckerman v. McCulley, 7 F.R.D. 739 (E.D.Mo.1947) (service on janitor who spent only part of each day at rooming house doing janitorial work not sufficient because janitor did not live there), appeal dismissed, 170 F.2d 1015 (8th Cir.1948); Bible v. Bible, 259 Ga. 418, 383 S.E.2d 108 (1989) (invalid service where summons and complaint left with defendant's employee at defendant's home when employee did not live there). In Franklin America, Inc. v. Franklin Cast Prods., Inc., 94 F.R.D. 645, 647 (E.D.Mich.1982), the United States District Court for the Eastern District of Michigan indicated that residence for purposes of Fed. R.Civ.P. 4(d)(1) meant something more than fleeting presence at a house:
It appears the common theme in the case is not only whether the defendant is reasonably likely to receive the papers served, but whether the person to whom they are handed is a full-time resident of the defendant's dwelling house or usual place of abode. See 2 MOORE'S FEDERAL PRACTICE ¶ 4.11(3) at 4-126. As 4 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1096 at 368-69, note:
"Residing therein" has long been held to require the recipient of the papers to be actually living in the same place as defendant. Thus, service on an employee of defendant who spends only a part of his time at defendant's residence is defective. See also 62 AM.JUR.2D, Process § 102 at 887-88 (1972).
Wichert is distinguishable from the present case both by the fact that the daughter was related to the defendants, and had actually slept in the home of the defendants the previous night at the time service was accomplished. *280 Neither one of these facts was present here.[7]
We decline to interpret RCW 4.28.080(15) so that mere presence in the defendant's home or "possession" of the premises is sufficient to satisfy the statutory residency requirement. Under such a view, service on just about any person present at the defendant's home, regardless of the person's real connection with the defendant, will be proper. A housekeeper, a baby-sitter, a repair person or a visitor at the defendant's home could be served. Such a relaxed approach toward service of process renders the words of the statute a nullity and does not comport with the principles of due process that underlie service of process statutes.
Our duty is to effectuate the intent of the Legislature in enacting a statute. If a statute is unambiguous, as is RCW 4.28.080(15), we are obliged to apply the language as the Legislature wrote it, rather than amend it by judicial construction. GESA Fed. Credit Union v. Mutual Life Ins. Co., 105 Wash.2d 248, 252, 713 P.2d 728 (1986). We must provide consistency and predictability to the law so the people of Washington may conform their behavior accordingly. The language of RCW 4.28.080(15) sets forth the standards for substituted service of process. We best accomplish the purpose of establishing predictable standards by not stretching the meaning of those standards beyond their plain boundaries.

CONCLUSION
We hold for purposes of RCW 4.28.080(15) that "resident" must be given its ordinary meaninga person is resident if the person is actually living in the particular home. Under no definition of "resident" found in any dictionary of the English language can any support be found for the contention that Ms. Terhorst was transmuted into a resident of the defendant's household by temporarily feeding his dog or taking in his mail. We decline to transform "resident" into "present" by judicial construction. The Legislature is free to amend the statute; we are not. The Court of Appeals was correct and we affirm the trial court's dismissal of Salts' action.
DURHAM, C.J. and DOLLIVER, GUY and MADSEN, JJ., concur.
ALEXANDER, Justice (dissenting).
Personal service may be effected on an individual by leaving a copy of the summons at the usual abode of that person with someone of suitable age and discretion who is "then resident therein." RCW 4.28.080(15). The majority concludes that in order for a person to be "then resident" in the usual abode of the individual upon whom service is sought, that person must actually be living in the abode. Majority op. at 279. Because that conclusion is in direct conflict with established precedent, I dissent.
This court last visited the "then resident therein" language of RCW 4.28.080(15) in Wichert v. Cardwell, 117 Wash.2d 148, 812 *281 P.2d 858 (1991). There, we held that process was properly served on defendants by leaving a copy of the summons with the daughter of one of the defendants at the defendants' usual abode. We concluded that "[w]hen the defendant is absent, the person in possession of the house of usual abode is likely to present the papers to the defendant...." Wichert, 117 Wash.2d at 152, 812 P.2d 858. Significantly, the person to whom the summons was delivered in Wichert did not reside at the defendants' usual abode, maintained her own residence, was self-supporting and kept no personal possessions at the residence of the defendants. Like Ms. TerHorst here, she was merely in possession of the defendants' abode.
The majority opinion contradicts Wichert, stating, "We decline to interpret RCW 4.28.080(15) so that ... `possession' of the [defendant's] premises is sufficient to satisfy the statutory residency requirement." Majority op. at 280. Moreover, it attempts to distinguish Wichert, stressing the fact that the individual receiving the summons in that case was related to one of the defendants and that she had spent the night prior to service at the defendants' home. Majority op. at 279-280. Those distinctions, in my view, are trifling. The fact that TerHorst was not related to Estes and did not spend a night at Estes's home simply does not detract in any important way from the similarities between Wichert and this case. Significantly, we did not say in Wichert that in order for an individual to be "then resident," he or she must be related to the defendant or must have spent the night previous to service at the abode. Indeed, in an earlier case we noted the unimportance, in substitute service cases, of delivery of the summons to a relative of the person upon whom service is sought, stating, "Had the legislature intended that substituted service under Rem.Rev. Stat., § 226, subd. 12, be restricted to delivery of a copy to an intended defendant's kith or kin, it would have so stated." Larson v. Zabroski, 21 Wash.2d 572, 575, 152 P.2d 154, 155 P.2d 284 (1945).
Unless and until Wichert is overruled, it is still the last word from this court on the subject and the decision must be followed. See Hamilton v. Department of Labor & Indus., Ill Wash.2d 569, 571, 761 P.2d 618 (1988) ("Once this court has decided an issue of state law, that interpretation is binding until we overrule it.") (citations omitted). Unfortunately, the majority strays from Wichert, suggesting that to be "then resident" one must meet a dictionary definition of the term "resident" and must "actually liv[e] in that house [defendant's] at the time of the service of process." Majority op. at 278-279, 277. A flaw in that reasoning is that RCW 4.28.080(15) does not speak of delivering a copy to a "resident," but rather to a person "then resident." The use of the word "then" before "resident" suggests that the person to whom the summons is delivered may have a more transitory relationship to the abode than does the person upon whom service is sought. Such a view is consistent with Wichert where we said that the word "then" is used in reference to the time of service. Wichert, 117 Wash.2d at 151, 812 P.2d 858.
Furthermore, the majority's strict construction of "then resident" runs counter to the liberal construction we gave those words in Wichert. We indicated there that "we do not apply a strict construction in interpreting the statute. Rather, we so construe the statute as to give meaning to its spirit and purpose, guided by the principles of due process stated above." Wichert, 117 Wash.2d at 156, 812 P.2d 858; see also Sheldon v. Fettig, 129 Wash.2d 601, 607-08, 919 P.2d 1209 (1996) (In Wichert, we gave "the term `then resident therein'" a liberal construction, "noting that strict construction `has been the object of a great deal of criticism in modern times.'") (quoting 3 NORMAN J. SINGER, STATUTORY CONSTRUCTION § 61.04 (4th ed.1986)).
Unfortunately, the majority's insistence on a strict definition of the term "resident" creates an anomaly in that the terms "house of usual abode" and "person of suitable age and discretion," which also appear in RCW 4.28.080(15), have been accorded liberal construction. See Sheldon v. Fettig, 129 Wash.2d at 607, 919 P.2d 1209. The majority's strict interpretation of another phrase in the same statute contravenes the principle that "the court may not place a narrow, *282 literal, and technical construction upon a part only of a statute and ignore other relevant parts." Graham v. State Bar Association, 86 Wash.2d 624, 627, 548 P.2d 310 (1976) (citing State v. Rinkes, 49 Wash.2d 664, 667, 306 P.2d 205 (1957)).
Because the majority strains to distinguish Wichert, I am left to conclude that it has, in effect, repudiated that decision without overruling it. Indeed, the majority criticizes Wichert, suggesting that this court "professed an inability to define `resident' with precision," and that we "concluded the meaning of resident was too `elastic' to be of much use." Majority op. at 278, 277. While we did indicate that the term "resident" is elastic, we did not conclude that it was without meaning. Instead, we held that in interpreting the term "resident" within the context of RCW 4.28.080(15) we should examine "the object or purpose of the statute in which the term is employed." Wichert, 117 Wash.2d at 151, 812 P.2d 858 (quoting McGrath v. Stevenson, 194 Wash. 160, 162, 77 P.2d 608 (1938)). We then concluded that the purpose of RCW 4.28.080(15) is to provide due process which, in turn, requires that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Wichert, 117 Wash.2d at 151, 812 P.2d 858 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).
Accordingly, I cannot agree with the majority that we have not previously determined the meaning of being "then resident" for the purposes of substitute service of process. Although we did not give the term "then resident" a precise dictionary definition as the majority does today, we were purposeful in not doing so. In that regard, we concluded in Wichert that a bright-line rule for determining when an individual is "then resident" is to be avoided because "a case-to-case determination is necessitated by the fact-specific requirements of the statute." Wichert, 117 Wash.2d at 152, 812 P.2d 858 (citing Nowell v. Nowell, 384 F.2d 951, 953 (5th Cir.1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968)). That conclusion is wholly consistent with Black's Law Dictionary which states that the "[w]ord `resident' has many meanings in law, largely determined by statutory context in which it is used." BLACK'S LAW DICTIONARY 1309 (6th ed.1990) (emphasis added) (citing Kelm v. Carlson, 473 F.2d 1267, 1271 (6th Cir.1973)).
Under Wichert, it is clear that an individual is "then resident" when that individual is in possession of the defendant's usual abode and delivery of the summons on that individual would likely inform the absent defendant that a lawsuit has begun against him or her. That is the case here. At the time the summons was delivered to TerHorst, she was in possession of Estes's abode and delivery of the summons to her was likely to inform Estes that Salts had begun a lawsuit against him.
In sum, when the facts are viewed most favorably to Salts, they lead to a conclusion that service was effected on Estes. TerHorst was in possession of Estes's home when the process server arrived and she answered the door in response to the process server's knock. It is also clear that she was "looking after [Estes's] house," at Estes's request, while Estes "was out of town and wouldn't be back for a couple of weeks." Supplemental Clerk's Papers (SCP) at 13. TerHorst's assigned duties included "feeding his dog[,] bring[ing] in the mail" and taking care of "other similar matters." SCP at 13, 56. Because TerHorst was in charge of Estes's home and indicated that she expressly assumed the duty of ensuring that Estes received correspondence intended for him, it was likely that Estes would have the summons transmitted to him. See 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1096, at 82-83 (2d ed.1987); see also Hartford Fire Ins. Co. v. Perinovic, 152 F.R.D. 128 (1993) (holding that doorman at defendant's condominium building, whose duty it was to receive delivery of packages and correspondence for tenants, was "residing therein" for purposes of service of process).
Finally, it is worth noting that on facts very close to these, the Supreme Court of Rhode Island reached a result consistent with that espoused in this dissent. In the case of Plushner v. Mills, 429 A.2d 444 *283 (1981), the Rhode Island court looked at a statute of that state which is almost identical to RCW 4.28.080(15) in that it provided for substitute service of process by leaving copies of the summons and complaint at the defendant's "dwelling house or usual place of abode with some person of suitable age and discretion then residing therein...." Plushner, 429 A.2d at 445 (emphasis added) (quoting Dist.R.Civ.P. 4(d)(1)). The court held there that service on the defendant's daughter, who maintained a separate residence, was effected because she "had been put in charge" of the defendant's house while he was away and, on the particular day of service, she was "taking care of the family dog." Plushner, 429 A.2d at 445. The court went on to state:
[I]f service had been made upon defendant's daughter at a time when she had no other residence than defendant's abode, she would have been considered a trusted member of his household.... She would have been considered a person "residing therein" under a strict reading of Rule 4(d)(1).
The defendant's daughter now has a separate residence.... The facts clearly indicate that she was placed in charge of the dwelling in her father's absence. Further, it is apparent that she was still considered a trusted member of defendant's household because she had a key and could come and go as she pleased. Finally, on the day process was served she was at defendant's house on family business.

Plushner, 429 A.2d at 446 (emphasis added). It concluded that "[i]t [service] was `reasonably calculated to give [defendant] knowledge of the proceedings and an opportunity to be heard.'" Plushner, 429 A.2d at 446 (quoting NLRB v. Clark, 468 F.2d 459, 464 (5th Cir. 1972)) (quoting NLRB v. O'Keefe & Merritt Mfg. Co., 178 F.2d 445 (9th Cir.1949)).
Similar to the situation in Plushner, delivery of the summons to TerHorst was reasonably calculated to give Estes knowledge of the proceeding against him so that he would have an opportunity to respond and be heard. Like the person with whom the summons was left in Plushner, TerHorst had a key to Estes's home, she could come and go as she pleased and she was taking care of the defendant's mail and his dog. It is readily apparent, in short, that Estes considered TerHorst to be an individual he could trust to be in charge of his household during his absence. By delivering the summons to TerHorst during the time she was in possession of the residence, service was effected on Estes comporting with due process requirements and complying with RCW 4.28.080(15). I dissent.
JOHNSON, SMITH and SANDERS, JJ., concur.
NOTES
[1] By waiting until the three-year statute of limitation for personal injuries had almost run, Salts left little room for manuvering should Estes not be available for service. As it turned out, Estes was out of town.
[2] We construe the facts on summary judgment in a light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995).
[3] In Mullane, the Court held notice by publication there did not comport with the requirements of due process.
[4] Weiss v. Glemp, 127 Wash.2d 726, 903 P.2d 455 (1995), represents a stricter adherence to the statutory language than the cases involving a "liberal construction" approach. There, Weiss argued windowsill service was constitutionally adequate, since it was reasonably calculated to provide notice to the defendant. In rejecting Weiss's argument, we said, "Nevertheless, there is a difference between constitutionally adequate service and service required by the statute: `[B]eyond due process [requirements], statutory service requirements must be complied with in order for the court to finally adjudicate the dispute between the parties.'" Weiss, 127 Wash.2d at 734, 903 P.2d 455 (quoting Thayer v. Edmonds, 8 Wash.App. 36, 40, 503 P.2d 1110 (1972)).
[5] Employed as an adjective, as in the statute, "resident" means: "residing, dwelling in a place." RANDOM HOUSE UNABRIDGED DICTIONARY 1638 (2d ed.1993); "dwelling or having an abode for a continued length of time." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1931 (1971); "permanent inhabitant." THE OXFORD GUIDE TO THE ENGLISH LANGUAGE 477 (1984); "dwelling or having an abode in a place for a continuance of time." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1540 (2d ed.1979); "[d]welling in a particular place." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1535 (3d ed.1992).
[6] See, e.g., M. Lowenstein & Sons, Inc. v. Austin, 430 F.Supp. 844, 845 (S.D.N.Y.1977) ("Rule 4(d)(1) is broad enough to include a student returning home from college to stay at least overnight at her parents' residence."); Sangmeister v. McElnea, 278 So.2d 675 (Fla.App.1973) (defendant's aunt who was a citizen of England and planned to return there after her visit but who had been residing in defendant's home for approximately four months at the time summons and complaint was left with her at defendant's home was a "person of the family over fifteen years of age" within meaning of statute allowing service of process to be made by leaving copies of summons at defendant's usual place of abode with some person of family over 15 years of age); but see Hovarth v. Aetna Life Ins. Co., 634 So.2d 240, 240 (1994) (after change in Florida substituted service statute: "attempted service of a relative who is not residing with the party to be served is insufficient, regardless of the probability that the party to be served will or does learn of the attempted service.").
[7] Washington appears to define "resident" more narrowly in the insurance context. In National Gen. Ins. Co. v. Sherouse, 76 Wash.App. 159, 163, 882 P.2d 1207 (1994), review denied, 126 Wash.2d 1009, 892 P.2d 1088 (1995), the Court of Appeals indicated the term "resident" in an insurance contract meant something more permanent than a passing or transient presence at a location:

Generally, "resident" connotes a living arrangement with some degree of permanence, while "household" means residents "who dwell under the same roof and compose a family". General Motors [Acceptance Corp. v. Grange Ins. Ass'n], [38 Wash.App.] at 10 [684 P.2d 744 (1984)] (citing Consumers United Ins. Co. v. Johnson, 26 Wash.App. 795, 801, 614 P.2d 657, review denied, 94 Wash.2d 1022 (1980)). A person does not have to remain physically within the household, however, so long as the person has some regular, permanent attachment to the family household. Pierce [v. Aetna Cas. & Sur. Co.], [29 Wash. App.] at 36-37 [627 P.2d 152 (1981)].
In Pierce, the court outlined four factors for consideration in determining who is a resident of the same household: "(1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging." Pierce, at 38 [627 P.2d 152]. An important element is whether the "departing person" intends to eat or sleep away from the residence permanently or temporarily with the intention of returning. See General Motors, at 10-11 [684 P.2d 744].