# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SIMONA VULETIC and MICHAEL HELGESON, wife and husband, | ) ) ) ) | No. 69515-1-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| DARRELL R. McKISSIC, | ) | UNPUBLISHED |
| Respondent. | ) ) | FILED: December 16, 2013 |
| | ) | |

Cox, J. — Substituted service at a defendant's usual abode requires, among other things, that the summons be served upon a person who is "then resident therein."[1] Here, the process server served a summons on the nanny at Darrell McKissic's home. Because the nanny did not live there, the service was insufficient. The trial court properly granted McKissic's CR 12(b) motion to dismiss for insufficient service of process and the running of the statute of limitations.

The facts are not disputed. On March 1, 2009, Simona Vuletic and McKissic were involved in a motor vehicle collision. Nearing the three-year statute of limitations, Vuletic and her spouse, Michael Helgeson, (collectively "Vuletic") filed this negligence action against McKissic on December 27, 2011.

On January 6, 2012, process server, Mark Hillard, handed a summons and a copy of the complaint to Jill Corr when she answered the door at the home of McKissic. Hillard later filed a return of service that stated he was "unable to

---

[1] RCW 4.28.080(15).

find **Darrell R. McKissic**, named party, so [he] served a person of suitable age and discretion, then resident therein, at the shared residence and usual abode of the named party, by delivering such copy to and leaving it with, Jill Corr, nanny for the defendant."

Despite the "then resident therein" language in his return of service, Hillard later testified that Corr told him that she was McKissic's nanny, but she was not related to McKissic and did not live at his home. Moreover, Corr later testified that she took the papers from Hillard, set them on McKissic's kitchen counter, and told McKissic about them. She saw McKissic walk toward the papers, but she did not see him pick them up.

On January 26, Levi Bendele appeared as the attorney on behalf of McKissic. The notice of appearance stated that the appearance did not waive any affirmative defenses.

Bendele and Vuletic's attorney, Morris Rosenberg, communicated about the case over the course of the next three months. There was also some discovery during this period.

On March 1, 2012, the three-year statute of limitations for this negligence action expired. On March 26, the ninety-day period to serve process that related back by statute to the December 27, 2011 date of filing of this action expired.

On April 6, Rosenberg sent Bendele completed stipulations and asked about an answer to the complaint. Rosenberg wrote, "Unless, I missed it, I do not believe an Answer has been filed on behalf of your client so please get that to me in the next ten days."

On April 20, Bendele filed the answer that asserted, for the first time, the affirmative defenses of lack of service of process, insufficiency of process, and statute of limitations.

In July, Vuletic moved for partial summary judgment striking these affirmative defenses. In response, McKissic moved to dismiss under CR 12(b) based on insufficient service of process and the statute of limitations.

The trial court granted McKissic's motion to dismiss "for lack of sufficiency of service of process." The court also ruled that "[w]aiver and estoppel are not persuasive, nor applicable here." The trial court implicitly denied Vuletic's motion without entering an order. The trial court also denied Vuletic's motion for reconsideration.

Vuletic appeals.

## SUBSTITUTED SERVICE

Vuletic argues that the trial court erred when it granted the CR 12(b) motion to dismiss because service of process of the summons and complaint upon McKissic's nanny was in substantial compliance with the requirements for substituted service. Because substantial compliance with the statute is not the proper standard and service was insufficient under the statute, we disagree.

"Proper service of the summons and complaint is a prerequisite to a court[] obtaining jurisdiction over a party."[2] "Whether service of process was proper is a question of law that this court reviews de novo."[3]

---

[2] Harvey v. Obermeit, 163 Wn. App. 311, 318, 261 P.3d 671 (2011).

[3] Goettemoeller v. Twist, 161 Wn. App. 103, 107, 253 P.3d 405 (2011).

Further, this court treats a motion to dismiss as a motion for summary judgment "when matters outside the pleading are presented to and not excluded by the court."[4] When reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court.[5] Thus, this court considers the facts in the light most favorable to the nonmoving party.[6] Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[7]

Under RCW 4.28.080(15), a plaintiff may effectuate "substituted" service or "abode" service if three requirements are met: "(1) the summons must be left at the defendant's 'house of his or her usual abode'; (2) the summons must be left with a 'person of suitable age and discretion'; and, (3) the person with whom the summons is left must be 'then resident therein.'"[8]

Here, only the third requirement is at issue. Specifically, the issue is whether service upon a nanny, an employee who did not live in the defendant's house of usual abode, was "then resident therein" at the time of service of the summons.

---

[4] Sea-Pac Co., Inc. v. United Food and Commercial Workers Local Union 44, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

[5] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

[6] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007).

[7] CR 56(c).

[8] Salts v. Estes, 133 Wn.2d 160, 164, 943 P.2d 275 (1997) (quoting RCW 4.28.080(15)).

The supreme court has explained that the word "then" means "the time of service," and the word "therein" means "the defendant's usual place of abode."[9]

In Salts v. Estes, the supreme court held "for purposes of RCW 4.28.080(15) that 'resident' must be given its ordinary meaning—a person is resident if the person is actually living in the particular home."[10] Citing a number of cases from other jurisdictions, the supreme court explained that "the usual rule is that service on employees and others who do not reside in the defendant's home does not comport with due process."[11]

Further, the court declined to interpret the term "resident" so that "mere presence in the defendant's home or 'possession' of the premises [would be] sufficient to satisfy the statutory residency requirement."[12] The court explained,

> Under such a view, service on just about any person present at the defendant's home, regardless of the person's real connection with the defendant, will be proper. A housekeeper, a *baby-sitter*, a repair person or a visitor at the defendant's home could be served. Such a relaxed approach toward service of process renders the words of the statute a nullity and does not comport with the

---

[9] Wichert v. Cardwell, 117 Wn.2d 148, 151, 812 P.2d 858 (1991).

[10] 133 Wn.2d 160, 162, 170, 943 P.2d 275 (1997) (concluding that "a person who was not living in the defendant's home, but agreed to take in his mail and feed his dog while he was on vacation" was not a "resident" under RCW 4.28.080(15)).

[11] Id. at 168-69 (citing Hardy v. Kaszycki & Sons Contractors, Inc., 842 F. Supp. 713 (S.D.N.Y. 1993); Hasenfus v. Corporate Air Servs., 700 F. Supp. 58 (D.C. 1988); Polo Fashions Inc. v. B. Bowman & Co., 102 F.R.D. 905 (S.D.N.Y. 1984); Zuckerman v. McCulley, 7 F.R.D. 739 (E.D. Mo. 1947); Bible v. Bible, 259 Ga. 418, 383 S.E.2d 108 (1989)).

[12] Id. at 169-70.

5

principles of due process that underlie service of process statutes.[13]

Here, the parties agree in their briefing that the process server handed McKissic's nanny, Corr, the summons and complaint. They also agree in the same briefing that Corr did not live in McKissic's home at the time of service. Under Salts and the plain words of the statute, Corr was not "then resident therein" for the purposes of substituted service. That is because she was not "actually living in [McKissic's] home" at the time of service.[14]

We also note that the Salts court indicated that it was not choosing to relax the "resident" requirement to include people like babysitters.[15] For purposes of this analysis, Corr, a nanny employed by the defendant, is sufficiently similar to a babysitter. Corr's mere presence at the home as McKissic's employee does not satisfy the "resident" requirement of RCW 4.28.080(15).[16]

Vuletic argues that Washington only requires substantial compliance with the substituted service requirements. He cites Sheldon v. Fettig to support this assertion.[17] But that case does not do that.

---

[13] Id. at 170 (emphasis added).

[14] See Salts, 133 Wn.2d at 170.

[15] Id.

[16] See id. at 169-70.

[17] Appellant's Opening Brief at 7 (citing Sheldon v. Fettig, 129 Wn.2d 601, 919 P.2d 1209 (1996)).

In <u>Sheldon</u>, the supreme court examined the term "house of [defendant's] usual abode" in RCW 4.28.080(15) and concluded that it should be "liberally construed to effectuate service and uphold jurisdiction of the court."[18]

Here, the definition of the term "resident" is at issue, not the term "house of [defendant's] usual abode." As discussed above, <u>Salts</u> defined the former term as a person "actually living in the particular home [of usual abode]" at the time of service.[19] Moreover, this definition of "resident" came **after** <u>Sheldon</u>'s recognition of "liberal construction" principles.[20] Thus, the definition in <u>Salts</u> is the law.

We also note that the <u>Salts</u> court distinguished <u>Sheldon</u> by characterizing <u>Sheldon</u> as marking the outer boundaries of what the service statutes required.[21] In <u>Salts</u>, the supreme court was not prepared to extend the law beyond the facts of <u>Sheldon</u>.

For these reasons, Vuletic's reliance on <u>Sheldon</u> and her corresponding arguments are not persuasive.

Similarly, Vuletic's reliance on <u>Wichert v. Cardwell</u> is not helpful.[22] There, the supreme court held that service upon a defendant's adult child staying

---

[18] <u>Sheldon</u>, 129 Wn.2d at 609 (alteration in original).

[19] <u>Salts</u>, 133 Wn.2d at 170.

[20] <u>Compare</u> <u>id.</u> at 160, <u>with</u> <u>Sheldon</u>, 129 Wn.2d at 601.

[21] <u>Salts</u>, 133 Wn.2d at 166.

[22] Appellant's Opening Brief at 10 (citing <u>Wichert v. Cardwell</u>, 117 Wn.2d 148, 812 P.2d 858 (1991)).

overnight at her parents' home was sufficient service upon the defendant parents.[23] But the Salts court distinguished Wichert from that case because "the daughter was related to the defendants, and had actually slept in the home of the defendants the previous night at the time service was accomplished."[24] As in Salts, these facts are not present in this case.

Here, service on a nanny, an employee of the defendant who did not live in the defendant's house and was not related to the defendant, falls outside these boundaries.

Vuletic also points out that Salts was a 5 to 4 decision, and that "the four Justice dissent would have upheld service under facts significantly less compelling than the facts in the instant case." That is irrelevant. The definition of the five-member majority is the law in this state.

Finally, Vuletic cites Brown-Edwards v. Powell to support the assertion that the requirements of substituted service were met.[25] But that case is also distinguishable. There, a process server inadvertently served the defendants' neighbor, who had the same first name as one of the defendants.[26] The neighbor brought the papers to the defendants, and she later signed an affidavit

---

[23] Wichert, 117 Wn.2d at 152.

[24] Salts, 133 Wn.2d at 169.

[25] Appellant's Opening Brief at 12-13 (citing Brown-Edwards v. Powell, 144 Wn. App. 109, 182 P.3d 441 (2008)).

[26] Brown-Edwards, 144 Wn. App. at 111.

swearing that she was competent to serve papers and she had served them.[27]

Division Three concluded that the neighbor properly served the defendants.[28]

Here, in contrast, Corr did not give the summons and complaint to McKissic. She left the documents on the counter and did not see him pick them up. Nor did she sign an affidavit of service indicating that she had handed the summons and complaint to him. For these reasons, Brown-Edwards is not helpful.

In sum, the trial court properly concluded that there was a "lack of sufficiency of service" by serving Corr. At the time of service, Corr was not "then resident" in McKissic's home.

## WAIVER OF SERVICE OF PROCESS DEFENSE

Assuming without conceding that service of process on Corr was insufficient, Vuletic argues that McKissic waived this defense. We disagree.

Washington courts recognize that in certain cases, the common law doctrine of waiver will preclude a defendant from asserting the defense of insufficient service of process.[29] "[A] defendant may waive an affirmative defense if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense."[30]

---

[27] Id.

[28] Id. at 112.

[29] Lybbert v. Grant County, 141 Wn.2d 29, 38-39, 1 P.3d 1124 (2000).

[30] King v. Snohomish County, 146 Wn.2d 420, 424, 47 P.3d 563 (2002).

"'[T]he doctrine of waiver is sensible and consistent with . . . our modern day procedural rules, which exist to foster and promote the just, speedy, and inexpensive determination of every action.'"[31]

This doctrine is "designed to prevent a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage."[32]

Whether a defendant has waived an affirmative defense, such as insufficient service of process, is a fact-specific inquiry.[33]

*Prior Behavior*

Vuletic first argues that McKissic waived the defense of insufficient service of process because his assertion of the defense was inconsistent with McKissic's prior behavior. She points to the following behavior: (1) McKissic's statements that he wanted to quickly resolve the claims, (2) McKissic's participation in discovery, and (3) McKissic's failure to answer interrogatories related to service. She contends that the doctrine of waiver applies to this case given this prior behavior along with the fact that McKissic did not assert the defense until after the statute of limitations expired. None of these support waiver.

---

[31] Id. (alteration in original) (internal quotation marks omitted) (quoting Lybbert, 141 Wn.2d at 39).

[32] Id.

[33] See Lybbert, 141 Wn.2d at 38-39; see also 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 4:44 (2d ed. 2013) (explaining that whether the doctrine of waiver applies is "fact-specific").

In Harvey v. Obermeit, this court explained three circumstances where courts have found that a party waived a defense based on prior behavior.[34]

First, a party may waive a defense where "the party's actions indicate that it has abandoned the defense."[35] For instance, in King v. Snohomish County, the defendants asserted a "claim filing" defense in their answer, but they "did not clarify the defense in response to [a later] interrogatory," and they "filed a motion for summary judgment that did not mention the defense."[36] Further, the parties engaged in "45 months of litigation and discovery" before making a motion to dismiss based on this defense.

Second, a party may waive a defense "where there are indications the defendant actively sought to conceal the defense until after the expiration of the statute of limitations and 90-day period for service."[37] For example, in Romjue v. Fairchild, the record showed that plaintiff's counsel had written to defense counsel *before* the statute of limitations expired and stated that "it was his understanding defendants had been served."[38] At that time, defense counsel

---

[34] 163 Wn. App. 311, 323-24, 261 P.3d 671 (2011).

[35] Id. at 323.

[36] Id. (citing King v. Snohomish County, 146 Wn.2d 420, 47 P.3d 563 (2002)).

[37] Id. at 324.

[38] 60 Wn. App. 278, 281-82, 803 P.2d 57 (1991).

knew that plaintiff's counsel had the wrong address for the defendant "yet he chose to say nothing until after the statute of limitation had expired."[39]

Finally, a party may waive a defense "where a party engages in considerable discovery not related to the defense."[40] "However, the mere act of engaging in discovery 'is not always tantamount to conduct inconsistent with a latter assertion of the defense of insufficient service.'"[41] "Instead, the cases indicate that a party must do more than simply conduct discovery."[42]

This court cited Lybbert v. Grant County to show how a defendant engages in "considerable discovery not related to the defense."[43] There, "the defendant acted as if it were preparing to litigate the merits of the case by engaging in discovery" that did not relate to sufficiency of service for nine months.[44] Additionally, the defendant "associate[d] with outside counsel; discuss[ed] the merits of the case and the possibility of mediation with opposing counsel; and [fail]ed to timely respond to the plaintiff's interrogatory asking whether the defendant planned to rely on any affirmative defenses, where a

---

[39] Id. at 282.

[40] Harvey, 163 Wn. App. at 324.

[41] Id. (quoting Lybbert, 141 Wn.2d at 41).

[42] Id. at 325.

[43] Id. at 324 (citing Lybbert v. Grant County, 141 Wn.2d 29, 41, 1 P.3d 1124 (2000)).

[44] Id. at 325 (citing Lybbert, 141 Wn.2d at 32).

timely response would have allowed the plaintiff several days to cure defective service."[45]

Here, none of the three circumstances that Harvey outlines are present.

First, the record shows that soon after McKissic asserted the insufficient service of process defense in his answer, he moved to dismiss Vuletic's claims. Thus, unlike King, McKissic did not abandon the defense.[46]

Second, unlike Romjue, there was no evidence that McKissic was concealing the defense or lying in wait for the statute of limitations to expire.[47]

This record shows that the inaccurate return of service was filed on January 6, 2012. Contrary to the evidence later provided, that return of service incorrectly recited that Corr was a resident at McKissic's at the time of service. It appears that neither side was aware of this inaccuracy until Vuletic requested an answer. Vuletic's request came in April, which was *after* the statute of limitations expired in March.

More specifically, on April 6, Rosenberg e-mailed Bendele regarding a number of issues, including Bendele's failure to answer the complaint. Rosenberg followed up on this e-mail on April 18. In McKissic's motion to dismiss, he asserts that Bendele did not know about the inaccurate return of service until April 18, when Bendele started working on the answer. Two days later, Bendele filed an answer asserting the service of process defense. There is

---

[45] Id. (citing Lybbert, 141 Wn.2d at 31-34).

[46] See King, 146 Wn.2d at 426.

[47] See Romjue, 60 Wn. App. at 282.

nothing in the record to dispute McKissic's assertion that he did not know there was an insufficient service defense until Vuletic requested an answer, which was after the statute of limitations had expired.

Vuletic argues that one of McKissic's statements disputes the assertion. She argues that "at his deposition McKissic testified that he became aware that there was a service of process issue from Bendele or Bendele's office." While McKissic made this statement during his deposition, this statement is not necessarily contrary to the assertion by Bendele. This statement does not indicate **when** Bendele learned about the defense. Thus, Vuletic presents no evidence to dispute this assertion.

Because there was no evidence that McKissic was concealing the defense or lying in wait for the statute of limitations to expire, the second circumstance is not present in this case.

The closer question is whether the third circumstance is present: whether McKissic engaged in "considerable discovery not related to the defense."[48]

The record shows that starting in January 2012, the parties' attorneys exchanged phone calls and emails about a settlement package and contact information for medical providers.

The parties' attorneys continued to communicate during February and March. In March, the parties discussed the possibility of scheduling Vuletic's deposition in May. On March 22, Bendele sent Rosenberg medical and

---

[48] Harvey, 163 Wn. App. at 324 (citing Lybbert, 141 Wn.2d at 41).

employment stipulations, requests for a statement of damages, interrogatories, and requests for production.

Comparing these undisputed facts to the facts in Lybbert, it appears that McKissic did not engage in "considerable discovery not related to the defense."[49] Although McKissic engaged in some discovery, he did so for approximately three months, unlike the defendant in Lybbert, who engaged in discovery for nine months.[50] Moreover, as McKissic argues, the discovery requests appear to have been "generic and routine." When Bendele discovered the availability of the insufficient service of process defense, he promptly asserted it. Also, unlike Lybbert, McKissic did not associate with outside counsel.[51]

Vuletic argues that "the instant case is a stronger one than Lybbert for application of waiver." Specifically, she points to the fact that on February 2, Vuletic served pattern interrogatories on McKissic, which included the question: "Do you allege insufficiency of process or of service of process? If so, please state the facts upon which you base your allegations." Answers to the interrogatories were due 30 days after service. As in Lybbert, she contends that if McKissic completed the interrogatories by this deadline, she could have perfected service before the statute of limitations expired.[52] But, unlike Lybbert,

---

[49] Id.

[50] See Lybbert, 141 Wn.2d at 32.

[51] See id. at 31-34.

[52] See id. at 42.

15

the record here does not show that parties discussed McKissic missing the deadline for what appears to be "generic and routine" interrogatories.[53]

Moreover, unlike Lybbert, the fact that substituted service was improper was not immediately apparent from the return of service.[54] In Lybbert, the supreme court noted that the county "knew or should have known that the defense of insufficient service of process was available to it" because it was apparent from the face of the process server's affidavit.[55] In contrast, here, the defense was not apparent from the face of Hillard's affidavit. The return of service stated that McKissic's nanny was a resident of his home, and it was not unreasonable for Bendele to assume that the nanny lived in the home. While this argument appears to go more toward the second circumstance for waiver, it is not persuasive given that the defense in this case was more difficult to discover than in Lybbert.

In sum, the undisputed facts show that McKissic did not waive the service of process defense because he engaged in "considerable discovery not related to the defense."[56]

---

[53] See id. (explaining that the county "did more than just undertake discovery" because its "detective contacted Lybberts' counsel in order to make certain that the [c]ounty correctly understood the nature and extent of the Lybberts' interrogatories").

[54] See id.

[55] Id.

[56] See Harvey, 163 Wn. App. at 324 (citing Lybbert, 141 Wn.2d at 41).

Vuletic argues that Blankenship v. Kaldor and Butler v. Joy support a finding that McKissic waived his insufficient service of process defense.[57] But those cases are distinguishable.

In Blankenship, Division Three of this court concluded that the defendant waived an insufficient service of process defense.[58] It pointed to three circumstances that supported this conclusion.[59] First, the parties engaged in discovery: both parties propounded interrogatories and requests for production, the defendant deposed the plaintiff, and the defendant took photographs of her residence before asserting the defense.[60] Second, the process server testified that the defendant's father assured the process server that he would turn the legal documents over to his insurance company who also insured his daughter, the defendant.[61] Third, the court noted that if defense counsel would have "seasonably attempted to contact his client, he would have learned she resided in Portland and not at her father's house at the time of service."[62]

Here, in comparison, McKissic appears to have engaged in less discovery than the defendant in Blankenship. He did not take actively collect evidence or

---

[57] Appellant's Opening Brief at 22-24, 25, 28 (citing Blankenship v. Kaldor, 114 Wn. App. 312, 57 P.3d 295 (2002); Butler v. Joy, 116 Wn. App. 291, 65 P.3d 671 (2003)).

[58] Blankenship, 114 Wn. App. at 319-20.

[59] Id.

[60] Id. at 319.

[61] Id. at 320.

[62] Id.

depose any witnesses *before* asserting the defense. Further, the nanny was not related to McKissic or tied to the case the way the defendant's father was involved with the case in Blankenship. Finally, Bendele appeared to be in communication with McKissic, but this communication would not necessarily have revealed that the nanny did not live with McKissic like it would have revealed the defendant's residence in Blankenship.

Butler is also distinguishable. There, Division Three focused on the fact that the defendant's first pleading was a motion for summary judgment asserting that the plaintiff's complaint presented no issue of fact as to negligence, liability, or causation.[63] This motion made no mention of an insufficient service of process defense.[64] Thus, the absence of this defense in the motion was inconsistent with the later assertion of the defense in the answer.[65]

Here, McKissic's first pleading filed with the court was his answer asserting the affirmative defense of insufficient service of process. Unlike Butler, this pleading was not inconsistent with any other pleading. Thus, the conclusion in Butler is not helpful.

While some of the facts in the cases where waiver applied are also present in this case, those cases are distinguishable when all of the undisputed facts of this case are considered. The trial court did not err when it concluded that McKissic did not waive this defense based on his prior behavior.

---

[63] Butler, 116 Wn. App. at 294, 298.

[64] Id. at 294.

[65] Id.

18

*Dilatory in Asserting Defense*

Vuletic next argues that McKissic waived the defense of insufficient service of process because he was dilatory in asserting the defense. Specifically, Vuletic contends that McKissic was dilatory because he did not file an answer asserting the defense until three and a half months after the return of service was filed. Because McKissic promptly asserted the defense in his answer after first learning of it, we disagree.

Generally, a defendant is not dilatory in asserting a defense if the defendant asserts the defense in the answer.[66] Further, delay in filing an answer does not necessarily waive a defense.[67]

In French v. Gabriel, the supreme court concluded that the defendant was not dilatory in asserting the defense of insufficient service of process even though he asserted the defense in an untimely answer.[68] In reaching this conclusion, the court highlighted the following: (1) the plaintiff did not ask the defendant to file an answer sooner than he did; (2) when the defendant failed to file a timely answer, the plaintiff could have moved for a default judgment but chose not to do so; and (3) the plaintiff did not object to the untimely answer.[69]

---

[66] King, 146 Wn.2d at 424.

[67] See French v. Gabriel, 116 Wn.2d 584, 593-94, 806 P.2d 1234 (1991); Gerean v. Martin-Joven, 108 Wn. App. 963, 973, 33 P.3d 427 (2001).

[68] 116 Wn.2d 584, 593-94, 806 P.2d 1234 (1991).

[69] Id. at 593.

The supreme court explained that "'[w]hile not to be condoned, mere delay in filing an answer does not constitute a waiver of an insufficient service defense.'"[70]

Here, McKissic asserted the defense in an untimely answer. But like French, similar facts support the conclusion that the failure to file the answer when due did not waive the defense. Vuletic could have moved for an order of default or could have objected when McKissic failed to timely answer. Instead, Vuletic asked McKissic to file an answer *after* the statute of limitations had already expired. As discussed above, this record indicates that Bendele did not know of the insufficient service of process until *after* Rosenberg requested an answer. Once Bendele discovered the defense, he promptly asserted it.

On this record, there is no showing of waiver of the defense by dilatory conduct.

Vuletic argues that French should not control this case because it "predates" waiver cases such as Lybbert and King.[71] While this is true, these latter cases do not overrule French.[72] Rather, these cases distinguish French in their factual analyses.[73] Thus, this argument is not helpful.

Vuletic also contends that "the facts in French show that while the defense had failed to answer within twenty days of service, it did answer more than a year

---

[70] Id. at 593-94 (alteration in original) (quoting French, 57 Wn. App. at 222).

[71] Appellant's Reply Brief at 10-14 (citing Lybbert, 141 Wn.2d at 29; King, 146 Wn.2d at 420).

[72] Lybbert, 141 Wn.2d at 44; King, 146 Wn.2d at 425.

[73] Id.

before the statute would run." But the supreme court's discussion regarding the statute of limitations was in response to French's equitable estoppel argument.[74] Further, as noted above, Vuletic did not request an answer until *after* the statute of limitations expired. Thus, this argument is not persuasive.

## EQUITABLE ESTOPPEL

Vuletic argues that the trial court erred when it granted the motion to dismiss because McKissic should have been estopped from asserting the defense of insufficient service of process. We disagree.

"Equitable estoppel is based on the notion that 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'"[75] "The elements of equitable estoppel are: '(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.'"[76]

---

[74] See French, 116 Wn.2d at 594-95.

[75] Lybbert, 141 Wn.2d at 35 (quoting Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993)).

[76] Id. (quoting Bd. of Regents v. City of Seattle, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)).

"Equitable estoppel must be shown 'by clear, cogent, and convincing evidence.'"[77]

In Lybbert, the supreme court explained that the first element of equitable estoppel was met because the defendant "acted in a way that was inconsistent with its eventual assertion of the defense of insufficient service of process."[78] The court stated, "For nine months following its attorneys' appearance in response to the [plaintiffs'] duly filed summons and complaint, the [defendant] gave multiple indications that it was preparing to litigate this case."[79]

Here, unlike Lybbert, the first element of equitable estoppel has not been established. As discussed above, the undisputed facts show that some of McKissic's behavior was inconsistent, but it was not enough given the short time period. Unlike Lybbert, McKissic did not act like he was going to litigate the merits of the case for nine months.[80] Instead, McKissic merely engaged in preliminary discussions and discovery for three months before discovering the defense.

In sum, even after viewing the evidence in the light most favorable to Vuletic, she has not established the first element by clear, cogent, and

---

[77] Id. (quoting Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)).

[78] Id. at 35-36.

[79] Id.

[80] See id.

convincing evidence. McKissic is not equitably estopped from asserting the insufficient service of process defense.

Having failed to establish the first element, all other factual disputes for the other elements are not material for summary judgment purposes. Accordingly, we do not discuss them further.

## DISCOVERY SANCTION

Vuletic argues that the trial court abused its discretion when it implicitly denied her motion for partial summary judgment to strike McKissic's affirmative defenses as a discovery sanction. We disagree.

CR 37(d) authorizes a court to impose a broad range of sanctions for noncompliance with discovery rules. Specifically, a trial may impose sanctions if a party fails to "serve answers or objections to interrogatories submitted under rule 33, after proper service of the interrogatories."[81] Under CR 33(a), "Interrogatories may, without leave of court, be served . . . upon any other party with or after service of the summons and complaint upon that party."

A trial court's decision on sanctions will not be disturbed on appeal absent a clear showing of abuse of discretion.[82]

Here, the trial court did not abuse its discretion when it implicitly denied Vuletic's motion for summary judgment striking affirmative defenses as a

---

[81] CR 37(d)(2).

[82] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

sanction. As previously discussed, the affirmative defense was proper and there was no reason to grant the motion to strike it.

Vuletic contends that if McKissic had answered the interrogatories regarding process of service "within the mandated thirty days, plaintiffs would have had three weeks to cure any defect and to effect service upon McKissic." She cites Lybbert to support this argument.[83] But, as Vuletic acknowledges, Lybbert did not address discovery sanctions.[84] She cites the portion of the opinion that addresses waiver.[85] Thus, this argument is not persuasive.

McKissic also argues that the trial court did not abuse its discretion when it did not strike the affirmative defenses as a discovery sanction because Vuletic failed to follow CR 26's meet and confer requirement. Vuletic argues that the "trial court has the inherent power under the appropriate circumstances to grant the requested relief whether or not there had been a CR 26(i) conference." The parties present different interpretations of Amy v. Kmart of Washington LLC[86] and Magana v. Hyundai Motor America[87] to support their respective arguments regarding CR 26's requirements. But, given the discussion above, we need not address these arguments.

---

[83] Appellant's Opening Brief at 34 (citing Lybbert, 141 Wn.2d at 42).

[84] Id.

[85] Id. (citing Lybbert, 141 Wn.2d at 42).

[86] 153 Wn. App. 846, 223 P.3d 1247 (2009).

[87] 167 Wn.2d 570, 220 P.3d 191 (2009).

## MOTION TO STRIKE AND REQUEST FOR SANCTIONS

After Vuletic submitted her reply brief, McKissic filed a "surreply" that addressed two factual disputes. Vuletic subsequently moved to strike the "surreply" and requested that the court impose sanctions under RAP 18.9. We grant the motion, disregard the unauthorized surreply, and impose sanctions.

Under RAP 10.1(b), the surreply is not authorized. McKissic concedes that he failed to make a motion to allow for additional briefing. Consequently, we disregard this unauthorized brief.

Under RAP 18.9(a), this court may order a party who fails to comply with the rules to pay terms or compensatory damages to any other party who has been harmed by that violation. Based on this rule, we impose sanctions because McKissic failed to comply with RAP 10.1. McKissic shall pay Vuletic the reasonable expenses of preparing and filing the motion to strike.[88] The amount shall be determined by a commissioner of this court following submission to the court of proper proof of such expense.

We affirm the order granting McKissic's motion to dismiss. We also disregard the "surreply" and impose sanctions under RAP 18.9(a) for the necessity to respond to it.

_Cox, J._

WE CONCUR:

---

[88] See, e.g., Chevron U.S.A., Inc. v. Puget Sound Growth Mgmt. Hearings Bd., 156 Wn.2d 131, 139-40, 124 P.3d 640 (2005).

25